## THE STATE OF MARYLAND *vs.* THE CONSOLI⁻ DATED GAS, ELECTRIC LIGHT AND POWER COMPANY.

*Consolidation of Corporations—Bonus Tax on Shares of Stock Issued and Cancelled.*

The Consolidated Gas, Electric, etc., Co., was formed by the union of a gas company and of a power company. The latter company at that time owned sixty-one per cent of the stock of the Gas Co. The certificate of consolidation and incorporation of the new company stated that its total authorized capital stock should be $21,902,258. Also that when the stock of the Gas Co. owned by the Power Co. shall have been exchanged as therein directed for the appropriate amounts of pre-ferred and common stock of the Consolidated Company such stock of the Consolidated Co. shall be cancelled by the Power Co. After such cancellation the total stock of the Consolidated Co. was to be $13,360,088. Code, Art. 81, sec. 98, provides that every new corporation shall pay to the State a bonus of one-eighth of one *per centum* upon the amount of capital stock which said company is authorized to have. *Held*, that the Consolidated Co. is a new corporation authorized under its certificate of incorporation to have a capital stock of $21,902,258, and although provision is made for the cancellation of a part of that amount yet it could not be cancelled until issued and could not be issued unless the bonus tax be paid and that the Consolidated Co. is liable for the bonus tax on that amount and not merely on $13,360, 088, being the balance of the stock remaining after deducting the cancelled stock.

*Decided November 16th, 1906.*

Appeal from the Superior Court of Baltimore City (DOBLER, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*William S. Bryan, Jr., Attorney-General*, for the appellant.

*Edgar H. Gans*, for the appellee.

BOYD, J., delivered the opinion of the Court.

The State of Maryland sued the appellee to recover a balance alleged to be due by it for the bonus tax of one-eighth of one per cent on its capital stock, under sec. 98 of Art. 81 of the Code. The appellee is a corporation formed by the consolidation of the Consolidated Gas Company of Baltimore City, and the Consolidated Gas, Electric Light and Power Company. The certificate of consolidation, executed by those companies, and the plan of consolidation, issued by the Continental Trust Company, were filed as exhibits and made part of the declaration. A demurrer to the *narr.* was sustained by the Court below and judgment entered for the defendant. From that judgment this appeal was taken.

By Art. iv, sec. 1, of the certificate of consolidation it is provided that: "The total authorized capital stock of the corporation shall be twenty-one million, nine hundred and two thousand, two hundred and fifty-eight dollars ($21,902,258), which shall be divided into 219,022.58 shares of the par value of one hundred dollars each. Of such total authorized capital stock" $9,585,484 thereof shall be common stock and $12,316,774 thereof shall be preferred stock, divided into two classes—the first class having $700,000 of prior lien preferred stock and the second having $11,616,774 of preferred stock. In the certificate; the appellee is spoken of as the "Consolidated Company," the Consolidated Gas Company as the "Gas Company," and the other as the "Power Company," and we will use those abbreviations in this opinion.

The certificate of consolidation provided, in detail, as to how the stock of the two constituent companies should be taken up, or paid for, and Art. 7 has this provision: "When the stock of the Gas Company now owned and held by the Power Company, amounting approximately to sixty-one per cent of the total issue thereof, shall have been exchanged in the manner herein provided for the appropriate amounts of preferred and common stock of the Consolidated Company, such preferred and common stock of the Consolidated Company shall be cancelled by the Power Company." We do not find the

amounts of the capital stock of the constituent companies mentioned in the certificate, but in the plan of consolidation they are stated, and that of the Gas Company is said to be: "Share capital, all common stock, par value, $10,770,968. Of which there is held by the Power Company $6,570,900." The distribution of new securities of the Consolidated Company proposed to be issued is therein given with the following statement: "The 61 per cent (approximately) of new securities which are exchanged for the Gas Co. stock owned by the Power Co. amounting to $5,256,720 of new preferred and $3,285,450 of new common will be cancelled, upon the receipt thereof by the Power Co." A statement is then made of the capitalization of the Consolidated Company after such cancellation—making a total of $13,360,088 of stock.

The precise question to be determined is, whether the bonus tax must be paid on the $21,902,258, or merely on the $13,-360,088, being the balance after deducting the cancelled stock. The statute requires every corporation incorporated under any general or special law of this State (except cemetery companies and others named) to "pay to the State Treasurer for the use of the State a bonus of one-eighth of one *per centum* upon the amount of capital stock which said company is *authorized to have*  *  *  *  and no company as aforesaid which shall be incorporated after the 21st day of March, 1894, shall have or exercise any corporate powers until said bonus has been paid to the State Treasurer." It is conceded by the appellee that the Consolidated Company is a *new corporation,* and hence was liable for the bonus tax—the only point in controversy being the amount for which it was so liable. The statute authorizing the consolidation of corporations (secs. 45, etc. of Art. 23 of Code) in terms provides that they "may by such union form one new corporation," and there seems to be no doubt about it under that and other language used in this section. See also *State* v. *B. & L. R. R. Co.,* 77 Md. 489; *People* v. *Rice,* 57 Hun. 486 (affirmed in 128 N. Y. 591); 10 *Cyc.,* 302. Sec. 45, provides that such union or consolidation shall be made upon such terms and

conditions as shall be agreed upon by the said corporations; "and the said new consolidated corporation shall have such name and such capital stock as shall be agreed upon," etc. A certificate of the said union and of the particulars thereof is required to be executed by the corporations, "and be acknowledged and recorded as other certificates of incorporation are in this article directed to be acknowledged and recorded." When this certificate was executed and recorded, what did it show the capital stock to be? Art. 4, sec. 1, in terms says *"the total authorized capital stock* of the corporation shall be $21,902,258, which shall be divided into 219,022.58 shares of the par value of $100 each, and it then goes on to say how much *"of such total authorized capital stock"* shall be common stock and how much preferred. It cannot be doubted that the authorized capital of this corporation was that mentioned in Article 4, unless there is some qualification of that elsewhere in the certificate. When a corporation is formed under sec. 50 etc. of Art. 23, it is required to state in its certificate of incorporation, amongst other things, the amount of capital stock, the number of shares and the amount of each share, and the amount so named is the basis for the bonus tax. If such a corporation should state in its certificate that the capital stock should be $100,000 but that it should, under certain conditions named, be reduced to $75,000, upon the organization of the company, unquestionably the bonus tax would have to be paid on the $100,000 because that would be the amount of capital stock "which said company was authorized to have."

But it is contended that Art. vii of the certificate qualified Art. iv, and in reality made the $13,360,088 the amount of capital stock which the appellee was "authorized to have," and that when the two Articles are taken together it cannot fairly be claimed that the authorized capital was intended to be as stated in Article iv. There are what seem to us insuperable difficulties in the way of that contention. In the first place, our corporation laws undoubtedly contemplate that the amount of capital stock (if any) *be definitely and accurately*

stated. The certificate is not only required to be filed in the Clerk's office, but "before proceeding to transact any business, or to open any office for the purpose of transacting such business," a copy must be filed in the office of the State Tax Commissioner (Art. 81, sec. 154). The object of the latter provision is to inform that officer, whose duty it is to assess corporations, of the organization, etc., of the company, and nothing is more important for him to know than the amount of the capital stock, the number of shares, etc. Yet it would be impossible for him, or for any one reading this certificate, to know what the capital stock of the appellee is, unless he be governed by the statements in Article 4, as that relied on by the appellee (Art. 7) does not give any information on that subject. Inasmuch as the amount of capital stock of the Gas Company in existence is not stated, no one could tell from the face of the certificate how much the Power Company owned and held—even if it be assumed that it would, or could, not take any cash for its stock in the Gas Company, as all those stockholders had the option to do under Art. 6 of the certificate.

But there is still a more serious difficulty to overcome. How could the preferred and common stock of the Consolidated Company, received by the Power Company for its stock in the Gas Company, be *cancelled* by the Power Company *until it was issued?* And we might here add how could the appellee issue it until the bonus was paid? The statute says that no company "shall have or exercise any corporate powers until such bonus has been paid to the State Treasurer." In *Md. Tube Works* v. *West End Im. Co.*, 87 Md. 207, we decided that a corporation could not sue until it was paid; in *Cleaveland* v. *Mullin*, 96 Md. 598, it was held that the receiver of a corporation could not recover on an offer to subscribe for stock, accepted by the company before it had paid the bonus tax, and in *Murphy* v. *Wheatley*, 102 Md. 501, the force of the statute was fully recognized, although the subscribers to that stock were held liable because they ratified their subscriptions after the bonus was paid. It is admitted in the brief of the

appellee that the $21,902,258 of stock was "formally issued," and that if all of it was issued to stockholders of the two companies, and not to the companies themselves, then all of it would be stock which the Consolidated Company is "*authorized to have,*" for it would represent new capital; but it is contended that inasmuch as 61 per cent of the Gas Company's stock belonged to the Power Company, as an asset, and by the consolidation became the property of the Consolidated Company, therefore the $8,542,170 of stock of the new company, which was due the Power Company, actually belonged to the new company and hence it would simply be issuing its own stock to itself, which would be a nullity. But the terms of Art. 7 undoubtedly contemplated that such stock *be issued*, and that it be *cancelled by the Power Company.* It could not be cancelled until it was issued, and it could not be issued until the new company was organized, and the company could not be legally organized until the bonus was paid. Whether the Power Company had the power to cancel it, notwithstanding sec. 46 of Art. 23, which provides that all property and assets of the constituent companies shall, upon the recording of the certificate," "be devolved upon said new Consolidated Company," is immaterial, for if the Power Company could not then receive and cancel it, the capital stock of the Consolidated Company as authorized by Art. 4 could not be thereby diminished, or affected, and if it be conceded that it, or the appellee, had such power, *then it must be issued before it is cancelled.* The statute imposing the bonus tax does not exempt stock "formally issued," or that issued for any other purpose, but it in broad terms imposes the tax "upon the amount of capital stock which said company is *authorized to have.*"

Nor does the fact that the Consolidated Company adopted this plan as a mere book-keeping arrangement, in order to more fully protect the rights of and more clearly show the stockholders holding the 39 per cent of Gas Company stock, that they were getting their due proportions, relieve it of paying the bonus. Whatever any stock be issued for, it is pre-

sumably for the benefit of the company issuing it.    The stock
of a company would undoubtedly have a better standing in
the financial market if it only amounts to $13,000,000 than if
it is nearly $22,000,000; but because it has adopted a plan by
which it proposed to reduce to a less sum the amount of cap-
ital, which it was authorized to issue, by the part of the certfi-
cate where that is properly stated, does not relieve it from the
bonus on the whole.    We use the term "reduced" advisedly,
because whatever we call it, that is undoubtedbly the effect of
the cancellation, and the Power Company certainly could not
cancel stock of the Consolidated Company, until it was issued.
And although the Consolidated Company cannot legally issue
stock until the bonus tax is paid (as secs. 98, etc., of Art. 81
requiring the bonus must be read into secs. 45, etc., of Art.
23, authorizing and giving effect to consolidation) it was "au-
thorized to have" the $21,902,258 of stock, and it is what it
*is authorized to have*, and not simply what it has or will issue
that the bonus must be paid on.

So without deeming it necessary to further consider whether
the plan adopted is equivalent to diminishing the capital stock,
as contemplated by our corporation laws, and if so whether it
can be done in the way proposed, or whether it would in
effect be a purchase of its own stock, and if so whether that
could be done, under the decision in *Maryland Trust Co.* v.
*Mechanics Bank*, 102 Md. 608, we are of the opinion that the
amount of capital stock which the appellee "is *authorized to
have*," within the meaning of sec. 98 of Art. 81 of the Code,
is twenty-one million, nine hundred and two thousand, two
hundred and fifty-eight dollars, and that the bonus must be
paid on that sum, and not merely on the $13,360,088, as was
decided by the lower Court.

Of course the "Statement and Plan for Consolidation,"
issued before the consolidation took place, cannot affect or
vary the certificate of consolidation, although we have con-
sidered it as a part of the declaration, and it enabled us to un-
derstand the situation more clearly than we might have done
without it.    It may not be out of place to add that the record

shows that the appellee promptly paid the amount of the bonus it admitted to be due, and this controversy only involves the balance.    If the appellee be correct in the view that such a tax —especially against a consolidated company—is inequitable, it is for the Legislature and not for us to remedy, as we must be governed by our construction of the statute, as applicable to the conditions presented by the record.

> *Judgment reversed, and new trial awarded, the appellee to pay the costs.*