# ALBERT DIGGS *vs.* THE FIDELITY AND DEPOSIT COMPANY, TRUSTEE, AND THE CONSOLIDATED GAS ELECTRIC LIGHT AND POWER COMPANY.

*Consolidation of Corporations—Extinguishment of Constituent Companies—Mortgage Securing Bonds to Be Issued for Property Afterwards Acquired by Corporation—Effect of Consolidation on Right to Issue Bonds— Rights of Bondholders Under Mortgage— Liability of Trustee Under Mortgage to Secure Bonds.*

When a trustee applies to a Court of Equity to construe the instrument creating the trust and to give directions as to its execution, persons *in esse* whose rights may be affected by the Court's action, must be made parties to the suit in person or by representation in order to bind them by the decree made therein.

The owner of property may by a deed of trust in the nature of a mortgage subject it to a lien for the payment of future debts.

Corporations have the power to mortgage property to be acquired in the future, and in such case, as soon as the property is acquired by the mortgagor, the lien of the mortgage will be regarded in equity as fastening upon it.

Code, Art. 23, sec. 46, which provides a mode by which two or more corporations may be consolidated, directs that the property, rights and liabilities of the former separate corporations shall devolve upon the new consolidated corporation, which shall be regarded as substituted in the room and stead of the former separate corporations. *Held,* that when two corporations are consolidated, their distinct corporate existence and powers perish in the process of consolidation, and that the resultant consolidated company is a new and separate

corporation, whose rights are acquired by special grant from the State, and not by way of transfer from the constituent corporations. The consolidated company is not a mere association of co-existing corporations.

If a mortgage executed by a corporation to a trustee provides for the issue of bonds to be secured by the mortgage for the purchase of property thereafter by the corporation, then if that corporation be consolidated with another by which a new corporation is created, and the former one ceases to exist, there is no power in the consolidated company to issue bonds for the property acquired by it which shall be entitled to the lien of that mortgage.

In 1904, a gas company executed a mortgage to a trustee by which it conveyed all the property it then owned and all that it might thereafter acquire to secure the payment of 15,000 bonds of $1,000 each. Of these, 1,015 were to be forthwith certified by the trustee and delivered to the gas company—a certain number were to be used to take up underlying mortgages on the property, and 5,500 bonds were to be issued from time to time to pay a part of the cost of the property to be thereafter acquired by the company. The mortgage provided that these last-mentioned bonds could only be issued and certified by the trustee upon the certificate of an engineer as to the cost and value of the property bought, and a resolution of the directors of the company requesting the trustee to deliver the bonds. In 1906, the gas company was consolidated with an electric light and power company, which had executed a mortgage of its property to the Continental Trust Company. In pursuance of the terms of the consolidation, a mortgage of all its property was made by the consolidated company to the last-mentioned trustee, subject to existing liens. The agreement of consolidation reserved to the consolidated company the right to issue bonds for future acquired property as the successor of the gas company. The consolidated company filed a petition, in an *ex parte* proceeding in a Court of equity in which the trustee of the gas company mortgage had asked the Court to assume jurisdiction of the trust, setting forth that it had bought certain property and asked that the trustee be directed to certify and deliver certain bonds as being entitled to the lien created by that mortgage. This petition was opposed by the ap-

pellant on this appeal, who was the holder of bonds issued by the gas company before the consolidation. At the time of the consolidation the bonds which remained unissued by the gas company were those authorized for the payment of underlying mortgages and for the future acquisition of additional property. *Held,* that the effect of the consolidation was to extinguish the corporate existence of the gas company and to transfer its property to the consolidated company.

*Held,* further, that the right to discharge underlying mortgages by the issue of bonds under the gas company's mortgage may be exercised by the consolidated company as an incident to the title to the property it had acquired subject to the mortgage, and that the Court would have jurisdiction to direct the execution of bonds for that purpose.

*Held,* further, that the consolidated company is not authorized to issue bonds under the mortgage of the gas company in payment for property which was not acquired by that company but by the consolidated company, since the latter company cannot comply with the conditions fixed by the mortgage for the issue of such bonds, and the after-acquired property, for account of which bonds were authorized to be issued by the terms of the gas company's mortgage, means only property subsequently acquired by that company.

*Held,* further, that the holders of bonds issued by the gas company before the merger have a right to insist that none of the reserved bonds be issued except in conformity with the conditions fixed by the mortgage, which in effect constituted a contract between the gas company and them.

*Held,* further, that the trustee under the gas company mortgage, which did certify some bonds issued by the consolidated company for property acquired by it, is protected from liability therefor under the terms of the mortgage, which declared that the trustee should not be answerable except for its own wilful default.

*Decided January 13th, 1910.*

Appeal from the Circuit Court No. 2 of Baltimore City (HARLAN, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Albert C. Ritchie* and *Stuart S. Janney,* for the appellant.

1. The only bonds which are secured by the Gas Company mortgage are the bonds of the Gas Company issued by it; the Gas Company has ceased to exist, and no power devolved upon the Consolidated Company to issue the bonds of an extinct corporation. The powers of the Consolidated Company are fixed by Code P. G. L., Article 23, section 46, which provides that the Consolidated Company shall have all the powers and rights of its constituent companies. While fully conceding this, we assert: That the powers of the Consolidated Company are not transmitted to it from the constituent companies, but are conferred upon it as a new grant, and are to be exercised by it as a new and distinct corporation.

It is apparent that the provisions of the general law under which the consolidation was effected, contemplate that the consolidated company formed thereunder shall be a new corporation, having such new capital stock as shall be agreed upon, and receiving, by virtue of the statute, a grant of all the powers and all the property of the constituent companies, and being subject to the debts and liabilities of the constituent companies.

It is well settled that where the statute contemplates the granting of corporate powers to the consolidated company, and the cancellation of the stock of the constituent companies, and the issue therefor of stock in the consolidated company, then the constituent corporations are dissolved and their corporate existence and powers extinguished immediately upon the consummation of the consolidation, and at the same time the consolidated company comes into being as a new corporation, with new powers and new franchises dating from that moment, and with a new capital stock. *Shields* v. *Ohio,* 95 U. S. 319-323; *Railroad Company* v. *Georgia,* 98 U. S. 359; *Keokuk & Western R. R. Co.* v. *Missouri,* 152 U. S. 301

(full discussion); *Yazoo & Mississippi R. R. Co.* v. *Adams,* 180 U. S. 1 (full discussion); *Shaw* v. *Covington,* 194 U. S. 593; *San Antonio Tr. Co.* v. *Altgelt,* 200 U. S. 304; *Rochester Ry. Co.* v. *Rochester,* 205 U. S. 236; *Yazoo & Mississippi Ry. Co.* v. *Vicksburg,* 209 U. S. 358; *Noyes, Intercorporate Relations,* sec. 60; *Cook on Corporations,* sec. 897; 10 *Cyc.* 302; *State* v. *N. C. Ry. Co.,* 44 Md. 131; *State* v. *Northern Central Ry. Co.,* 90 Md. 447; *Northern Central Ry. Co.* v. *State,* 93 Md. 737; *Northern Central Ry. Co.* v. *Maryland,* 187 U. S. 258; *State, use Dodson,* v. *Baltimore & Lehigh R. R. Company,* 77 Md. 489; *State* v. *Consolidated Gas Electric Light and Power Company,* 104 Md. 364.

The right to issue bonds is not property. *Richardson* v. *Green,* 133 U. S. 47; *Eastern Cable Co.* v. *Mfg. Co.,* 164 Mass.

There are many cases in which it has been held that the power of a constituent company to issue bonds passed to the consolidated company, and in some of them it has been said that this power could be exercised for the purpose of retiring obligations of the constituent companies, or for the purpose of completing the roads of the constituent companies. *Mead* v. *Railroad Co.,* 45 Conn. 199; *Taylor* v. *Railroad Company,* 57 How. Pr. 26; *Shaw* v. *Norfolk County R. R. Co.,* 16 Gray (Mass.) 407; *Camden, etc., Co.* v. *Burlington Carpet Co.,* 33 Atl. Rep. 478, 480 (N. J., 1905).

But in every one of these cases the power upheld was the power of the consolidated Company to issue its own bonds, not bonds of one of its constituent companies which had become extinct.

In *New Jersey Midland Ry. Co.* v. *Strait,* 35 N. J. L. 322, it was held that one entitled to receive the bonds of a railroad company could not be compelled by a company into which that railroad consolidated to receive its consolidated bonds. The consolidation had resulted in extinguishing the company, "and the consequence is, there is not the ability to perform the contract on the part of the (original) com-

pany." In like manner, the present consolidation ended the ability to issue any more Gas Company bonds.

In *Parkinson* v. *West End Co.,* 173 Mass. 446, it appeared that a bondholder of a street railway company had the right to convert his bonds into stock of that company, and the road in question subsequently consolidated with another corpora- tion under a statute making the new corporation "subject to all the duties, restrictions and liabilities" to which the constituent company was subject. It was held that the holder of the bonds of the first corporation could not maintain an action against the consolidated company for a refusal to de- liver its preferred stock in exchange for the bonds. "A con- solidation which makes no arrangement for furnishing stock in the new company and which ends the existence of the old ones, as a general rule, may be presumed to put an end to the right of bondholders to call for stock."

In *Tagart* v. *Northern Central Ry. Co.,* 29 Md. 557, this Court held that by the act of consolidation there before the Court the York and Cumberland Railroad Company "ceased to exist as a separate corporation so far as respected its pow- ers to create or issue certificates of capital stock." The power to issue stock no longer existed, because the corporation itself no longer existed. Why, then, should the power to issue bonds of a corporation continue after the corporation itself has ceased to exist?

Particular provisions of the Gas Company mortgage ren- der impossible the issue of the reserved bonds by the Con- solidated Company. The form of the Gas Company bond is prescribed in the mortgage. It is to be the bond of "The Consolidated Gas Company of Baltimore City." It is that company which promises to pay the principal and interest, and it is the property and franchises of that company which are recited to be the security. The bond is to be executed by that company, through its president, and its seal attested by its secretary is to be attached, and it is the signature of its treasurer which is to be appended to the coupons.

Article IV, sec. 1 of the mortgage provides that all the bonds "shall be substantially of the tenor and purport above recited," and shall "be executed on behalf of the Gas Company by its president or vice-president, and its corporate seal shall be thereunto affixed and attested by the secretary." There is no longer any such corporation as the Consolidated Gas Company of Baltimore City. The Gas Company shall name an engineer, who shall furnish the trustee with a certificate stating that "such additional plant or property is desirable for the Gas Company to acquire in the profitable conduct of its business."

The directors of the Gas Company shall pass a resolution, reciting said certificate, and requesting the trustee to deliver the bonds to such officers of the Gas Company as shall be named in said resolution.

Here are express requirements that these reserved bonds shall only be issued upon the exercise by the directors of the Gas Company of a discretion conferred upon them, and upon the judgment of the Gas Company's engineer. Is not the proposition unanswerable that matters involving discretion can only be exercised during the existence of the persons in whom alone that discretion is reposed? The directors of the Gas Company have long since ceased to exist, and there is no longer any Gas Company in being which can appoint an engineer to exercise the discretion required by the mortgage to be exercised before these reserved bonds can be issued.

Moreover, the bonds can only be issued upon the engineer's certificate that the new property is desirable for the Gas Company in the profitable conduct of its business. There is no longer any Gas Company which can acquire property, and no longer any business conducted by the Gas Company. *Railroad Co.* v. *Maine,* 96 U. S. 499; *Harshman* v. *Bates County,* 92 U. S. 569; *N. J. R. Co .v. Strait,* 35 N. J. L. 322; *In re Strikeman's Will,* 96 N. Y. Supp. 460.

2. The Gas Company bonds reserved for the acquisition of additional property, at eighty per cent. of cost, can be issued only in case the property so acquired becomes subject to the

lien of the Gas Company mortgage; therefore, in no event can these bonds be issued now, because additional property purchased by the Consolidated Company will become directly subject to the Power Company mortgage.

It is entirely clear that these $5,500,000 reserved bonds could be issued for no other purpose than the one specified, and that by virtue of the covenants contained in the mortgage the additional property paid for (to the extent of eighty per cent. of cost) with their proceeds, must become directly subject to the lien of the mortgage. These requirements are part of the contract between the Gas Company and every holder of Gas Company bonds, and the issue of any of these reserved bonds for any purpose other than the acquisition of new property, or for new property which would not come directly under the Gas Company mortgage, would necessarily be a breach of this contract, and could be enjoined. *Pennock et al.* v. *Coe, Trustee,* 23 How. 129; *Basshor Co.* v. *Carrington, Receiver,* 104 Md. 629; *State* v. *Northern Central Rwy. Co.,* 18 Md. 212; *Machen, Corporations,* Vol. II, sec. 1930.

The Consolidated Company's contention that additional property now purchased, to the extent of eighty per cent. of cost, with the proceeds of the reserved Gas Company bonds, will become directly subject to the Gas Company mortgage, is based upon the fallacy of assuming that the Consolidated Company can be treated as the successor of the Gas Company alone as to the gas branch of its business, and as the successor of the Power Company alone as to the electric branch. In law the Consolidated Company is a new corporation, which has taken the place of two companies now extinct, and which combines in itself a gas franchise and an electric franchise by virtue of a new and separate grant to it. This corporation does not acquire property solely for its gas business or solely for its electric business, because these two lines of business have been granted as one united whole to the new company, and when that new company acquires property, it does so for its own business and its own purposes.

The result is that additional property acquired by the Consolidated Company cannot become subject to the lien of the Gas Company mortgage. That mortgage only covers additional property acquired by the Gas Company, and the Gas Company is extinct and can acquire no more property. Therefore, property acquired by the Consolidated Company, being acquired for its powers and purposes, must pass under its mortgage. *N. Y. Trust Co.* v. *Louisville, etc., R. Co.,* 102 Fed. Rep. 382; *Hinchman* v. *Point Defiance R. Co.,* 14 Wash. 349; *Pullman Co.* v. *M. P. R. Co.* 115 U. S. 587; *Shields* v. *Ohio,* 95 U. S. 319; *St. Louis, etc., R. Co.* v. *Gill,* 156 U. S. 649; *Shair* v. *Covington,* 194 U. S. 593; *In re Strikeman's Will,* 96 N. Y. Supp. 460.

3. If additional property purchased, at eighty per cent. of cost, with the proceeds of Gas Company bonds could become subject to the Gas Company mortgage, it could only be so to the extent of this eighty per cent., and as to the remaining twenty per cent. such property would become subject to the Power Company mortgage, thus breaking up the unity of the security of both mortgages.

4. The Gas Company bonds reserved for the acquisition of additional property cannot be issued for betterments; therefore the amount of such bonds proposed to be used for betterments can in no event be issued.

*Edgar H. Gans* and *Charles Markell,* for the Consolidated Gas, etc., Co., appellee.

1. The right to issue reserved bonds under the mortgage of April 1st, 1904, is a right of the Gas Company which passed to and is exercisable by the Consolidated Company by virtue of the consolidation of June 20th, 1906. *Code,* Art. 23, secs. 45 and 46; *State, use of Dodson,* v. *B. & L. R. Co.,* 77 Md. 491-2; *Consol. Gas. Co.* v. *Baltimore County,* 98 Md. 689.

Whatever may be the construction of special consolidations elsewhere, in Maryland at least the substitution of the new corporation for each of the old corporations in respect to all the rights, privileges and obligations of the old corporation is

complete. So far as technical corporate existence alone is concerned, the old corporations have ceased to exist, and a new corporation has taken their place (*State* v. *Consolidated Gas Electric Light and Power Company,* 104 Md. 364). So far, however, as the rights and obligations of every kind, by contract or otherwise, of the old corporations are concerned—that is, so far as the old corporations are aggregations of rights and obligations, aside from any question of technical corporate existence—the old corporations continue to exist precisely as before. They exist with all their rights and obligations unchanged and unimpaired, not in their original separate corporate entities, but in the one new corporate entity, which embraces both the old corporations and the rights and obligations of both. In this sense, the Consolidated Gas Company of Baltimore City exists today; and in this sense only—as the possessor of certain rights reserved and the subject of certain obligations assumed—does the 1904 mortgage have to do with the Consolidated Gas Company of Baltimore City. Of course, in the sense of technical corporate existence, the Consolidated Gas Company of Baltimore City does not exist today; but the 1904 mortgage does not have to do with the Consolidated Gas Company of Baltimore City in that sense. The mortgage does not contain a single provision conditioned upon the technical corporate existence of that corporation; it does contain page after page defining rights and obligations of the Gas Company.

The Gas Company, as a corporate entity, cannot acquire additional property and cannot deliver a resolution of its board of directors; but the Consolidated Company; as successor of the Gas Company, can acquire property in precisely the same way for precisely the same purposes, and subject to precisely the same limitations and restrictions as the Gas Company could have acquired property. The Consolidated Company likewise in its distinct capacity as successor of the Gas Company can present a resolution of its board of directors requesting the exercise of its right, as successor to the Gas Company, to issue bonds.

The Consolidated Company, under its general corporate powers, may acquire property for any of its proper corporate purposes, whether those purposes be derived from the charter of either or both of the constituent companies by whose consolidation it was formed. The Consolidated Company, as successor of the Gas Company, can, however, only acquire property which the Gas Company could have acquired, for purposes for which the Gas Company could have acquired property. It is not in its general capacity as a corporation, but in its special capacity as successor of the Gas Company, that the Consolidated Company has the right to issue bonds under the 1904 mortgage. This distinction has been carefully observed by the Consolidated Company whenever it has issued bonds under the Gas Company mortgage.

The resolutions of the board of directors and the engineer's certificate have recited not simply acquisitions of property by the Consolidated Company, but acquisitions of property by the Consolidated Company in its capacity as successor of the Gas Company. The engineer's certificate has recited, not that the property acquired is desirable for the Consolidated Company to acquire in the profitable conduct of its business, but that it is desirable for the Consolidated Company to acquire in the profitable conduct of its gas business. That is,— to quote again from the *Dodson Case,*—"whatever appertained to either of the constituent bodies, now, in the same measure and under the same conditions, appertains to the composite body." *Prouty* v. *Ry. Co.,* 52 N. Y. 363; *Boardman* v. *Ry. Co.,* 84 N. Y. 181.

The notion that a successor by consolidation cannot avail itself of rights under a contract in which only the predecessor corporation is mentioned, and no rights are expressly reserved to a successor by consolidation, finds no support in the authorities. The Maryland cases already quoted are incompatible with such a notion, and, of themselves, make it impossible for that notion to receive the approval of this Court. The authorities elsewhere also firmly establish the right of a

successor corporation to exercise contractual rights reserved
or conferred only in the name of a predecessor corporation.

An important series of decisions on the effect of a consoli-
dation upon rights conferred, by contract or otherwise, in the
name of one of the consolidating companies is the so-called
*Township and County Bond Cases* in the Supreme Court of
the United States. *Scotland County* v. *Thomas,* 94 U. S.
682; *East Lincoln* v. *Davenport,* 94 U. S. 801; *Schuyler
County* v. *Thomas,* 98 U. S. 169; *Wilson* v. *Salamanaca,* 99
U. S. 499; *Empire* v. *Darlington,* 101 U. S. 87; *Menasha* v.
*Hazard,* 102 U. S. 81; *Harter* v. *Kernochan,* 103 U. S. 562;
*New Buffalo* v. *Cambria Iron Co.,* 105 U. S. 73; *Bates
County* v. *Winters,* 112 U. S. 325; *Livingston County* v.
*Portsmouth Bank,* 128 U. S. 102.

These ten cases present a great variety of facts, but in
each case was involved the validity of township or county
bonds issued as a subscription to stock of or as a donation to
a railroad company. In each case there was a statute author-
izing a stock subscription or donation, as the case might be,
to one corporation, but the bonds were actually issued to a
successor corporation formed by consolidation. In each case
the subscription or donation and the bonds issued therefor
were held valid. The various statutes were regarded as con-
ferring not only a right on the public authorities to make a
subscription or donation, but also a correlative right on the
railroad company to receive such subscription or donation
and the bonds therefor. This latter right was one of the
rights and privileges which passed to a successor by consolida-
tion.

It is, at least, no more difficult, in the strict literal and
verbal sense, for an extinct corporation to acquire property
and issue bonds than it is for an extinct corporation to issue
stock and perform a subscription contract. Stated in just that
form, both are, literally, impossible; but, substantially,
through its successor by consolidation, the extinct corporation
can, in the eyes of the law, acquire property and issue bonds
or stock under and pursuant to a contract which mentions

only the predecessor corporation. In either case, the successor corporation issues its bonds or its stock, as its own corporate act, but only in the right of the predecessor corporation.

The 1904 mortgage confers not a power of attorney or authority from principal to agent to issue bonds, but a vested right, which, therefore, passes to the Consolidated Company. But even were this not so, yet, under the *Livingston County Case,* "the provision for consolidation" by existing statute, became a part of the mortgage. In fact, the consolidation statute was not only in this way a part of the mortgage, but was actually brought to the attention of the parties by the recital, on the first page of the mortgage, of the two previous consolidations, which resulted in the formation of the Gas Company. See also *Eastern Ry.* v. *Cochran,* 9 Exch. 197.

2. The right to issue further bonds under the 1904 mortgage of the Gas Company is not restricted by the provisions of Article 4, section 4 of the Supplemental Indenture of the Power Company dated May 15th, 1905. *Claflin* v. *So. Car R. Co.,* 8 Fed. Rep. 118.

Even if there were—as we submit there is not—doubt as to the meaning of the language in question, it must be remembered that in the supplemental indenture of further assurance, dated November 19th, 1906, from the Consolidated Company to the Continental Trust Company, trustee, the right is expressly reserved to issue the unissued bonds under the 1904 mortgage. As already stated, this indenture by way of further assurances was executed on the demand of the Continental Trust Company, trustee, pursuant to the express provisions of the Supplemental Indenture calling for the execution, by the company formed by consolidation, of such indenture as might be required by the trustee. In demanding and accepting such indenture, which was the method provided by the Supplemental Indenture of May 15th, 1905, for perfecting the lien intended to be secured by Article 4, section 4 of that Supplemental Indenture, the Continental Trust Company, as trustee, represented the bondholders, who

are, therefore, bound by the construction put upon the Supplemental Indenture by the trustee, and by the reservation in the indenture of November 19th, 1906, of the right to issue unissued bonds under the 1904 mortgage. *Baltimore City* v. *United Rys. Co.,* 108 Md. 64, 70; *Elwell* v. *Fosdick,* 134 U. S. 500.

*Henry W. Williams,* for the Fidelity and Deposit Co., trustee.

SCHMUCKER, J., delivered the opinion of the Court.

The proceeding before us is an *ex parte* one instituted in Circuit Court No. 2 of Baltimore City by the Fidelity and Deposit Company of Maryland (hereinafter called the Fidelity Company) as trustee under a mortgage deed of trust made to it by the Consolidated Gas Company of Baltimore City (hereinafter called the Gas Company). The purpose of the proceeding is to procure the execution of the trusts of the mortgage under the direction and supervision of the Court.

There is no question that in cases of express trusts the trustee, if in doubt, may, for his protection, apply to a Court of equity for a construction of the instrument creating the trusts and for their execution under the Court's direction and supervision. Cases of that class form an exception to the general rule that Courts of equity will not declare future rights but will leave them to be determined when they come into possesson. As was said in *Cross* v. *Del Valle,* 67 U. S. 1: "In such cases, from necessity and in order to protect the trustee, the Courts are compelled to settle questions of the validity and effect of contingent limitations in a will (which was the form of instrument creating the trusts there involved) even to persons not *in esse* in order to make a final decree and give proper instructions in relation to the execution of the trusts, *Bowers* v. *Smith,* 10 Paige, 200. It is this necessity alone which compels a Court to make such cases an exception to the general rule." Even in such cases, however, where the

persons whose rights are to be affected by the Court's action are *in esse* and within the reach of its process the funda-mental principles of equity jurisdiction require that they must be made parties to the suit in person or by representa-tion in order to bind them by the decrees or orders to be passed therein.

Keeping these principles in view we will proceed to the consideration of the issues presented by the present appeal, which is not from the decree assuming jurisdiction over the trust estate but from an order subsequently passed directing the trustee to certify and deliver certain bonds in perform-ance of its duties under the mortgage creating the trusts.

The material allegations, of the trustee's petition on which the Court took jurisdiction in the case, may be briefly stated as follows:

The Gas Company was created on May 5th, 1888, by the consolidation, under the provisions of the general corporation laws of this State, of three pre-existing corporations which may be designated as having been the "Baltimore," the "Chesapeake" and the "Equitable" gas companies. On April 1st, 1904, the corporation thus formed made the mortgage deed of trust, already mentioned, to the petitioner to secure a proposed series of bonds amounting in the aggregate to $15,000,000, to be issued for the purposes, at the times and upon the terms and conditions in the mortgage set forth.

On June 20th, 1906, after that mortgage had been made but before all of the bonds to be secured by it had been issued, the Gas Company was, itself, consolidated under the general corporation laws of the State, with another Maryland corpora-tion known as the Consolidated Gas Electric Light and Power Company (hereinafter called the "Power Company") thus forming the now existing corporation, the Consolidated Gas Electric Light and Power Company of Baltimore which we will hereinafter call the "Consolidated Company."

One of the terms of the last mentioned consolidation was that, immediately upon its completion, "all the property and franchises of the Gas Company" should pass, "subject only to

such liens on such property as existed prior to this consolidation," to the Continental Trust Company as trustee under a mortgage which had theretofore, on February 14th, 1905, been executed to it by the Power Company and also under a supplemental mortgage which had been executed to it by the Power Company on May 15th, 1905, to secure the payment of $15,000,000, of bonds of that company referred to in said original and supplemental mortgages.

The Consolidated Company, the now existing corporation, in pursuance of the terms of its incorporation executed on November 19th, 1906, a supplemental mortgage, of all of its property of every kind and description, except certain specified parcels of land, subject to existing liens thereon, and also all property and franchises which it might thereafter acquire, to the Continental Trust Company as trustee under the above mentioned mortgage and supplemental mortgage, which had been made to it by the Power Company on February 14th and May 15th, 1905, to be held subject to the terms and for the purposes of said mortgages.

The mortgage of April 1st, 1904, from the Gas Company to the petitioner, conveyed in terms not only the property of every kind then owned by the Gas Company but also such as it might thereafter acquire and both that company, during its existence, and since then the Consolidated Company have from time to time executed conveyances of property thereafter acquired to the petitioner upon the trusts of said mortgage of April 1st, 1904.

Certified copies of the deeds, mortgages, and instruments of consolidation mentioned in the petition were filed with it as exhibits and appear in the record.

The petition, after making the allegations of facts aforesaid, states that "by reason of the various mortgages or deeds of trust prior to and subsequent to the mortgage or deed of trust to your petitioner as trustee, and by reason of the consolidation" by which the Gas Company was formed "your petitioner has been in doubt as to its duties, rights and obligations as trustee and more especially your petitioner has been

in doubt as to its rights, and duties with reference to the certification of further bonds under said mortgage deed of trust" at the request of the Consolidated Company, and it is therefore desirous of executing its trusts under the direction and supervision of the Court. It then prays the Court to take jurisdiction of the trusts of the mortgage and their execution and of the trust property and for further relief.

Upon the filing of the petition and accompanying exhibits the Court passed a decree declaring "that relief be granted as prayed in said petition and that the Court do hereby assume jurisdiction over the trust" created by the mortgage of April 1st, 1904, from the Gas Company to the petitioner and over the property now or hereafter to be held in trust under it and over all of the acts of the petitioner as trustee under it.

As the allegations of the petition are of a general nature it is necessary to refer to the contents of some of the exhibits in order to arrive at an accurate understanding of the questions presented by it.

An inspection of the mortgage of April 1st, 1904, from the Gas Company to the petitioner, for the execution of whose trusts the aid of the Court is invoked, shows that it was made to secure the payment of 15,000 bonds for $1000 each which were to be executed by the Gas Company and on each of which the trustee was to endorse a certificate that it was one of the series of bonds secured by the mortgage. Of these bonds 1015 were to be forthwith certified by the trustee and delivered to the Gas Company upon its order. Of the remainder 1,500 bonds were to be applied to the redemption of outstanding certificates of indebtedness of the company,— 6,895 bonds were to be used to take up and retire, as they matured, outstanding bonds which were secured by underlying mortgages on the company's property, and 5,500 bonds were from time to time to be issued to pay eighty per cent. of the cost of property to be thereafter acquired by the company.

Before any bonds could be issued for the purchase of after-acquired property the trustee must be furnished with the certificate of an engineer appointed by the Gas Company, and also, at its option, of an engineer to be appointed by it, stating that the plant or property proposed to be purchased is desirable for that company to acquire in the profitable conduct of its business and also stating the actual cost of the property, and the trustee must also be furnished with a resolution of the directors of the company reciting the engineers' certificates and requesting the trustee to deliver the bonds. The mortgage also contains covenants on the part of the mortgagor to make all needed and proper betterments and improvements, to keep the mortgaged property and appliances in such thorough repair that their efficiency shall at no time become impaired, to pay off all taxes, prior lien bonds, liens and incumbrances and to convey to the trustee upon the trusts of the mortgage all property thereafter acquired by the company whether the same be appurtenant to its business or not.

Among the other provisions of the mortgage is to be found one exempting the trustee from liability or responsibility for any acts or defaults of the Gas Company its servants or agents and further providing *"nor shall the trustee be held liable for any acts, defaults or misconduct of any agents or persons employed by it, unless chargeable with gross negligence in the selection or continuance of their employment, nor shall the trustee be answerable except for its own wilful default or gross misconduct."*

From an examination of the agreement and certificate of June 20th, 1906, for the consolidation of the Gas and Power Companies it appears that not only did the property of those two companies pass to the Consolidated Company subject to the then existing liens thereon, but that in the process of consolidation all of the property of the Consolidated Company was subjected to the further liens of $700,000, of Prior Lien Preferred Stock and $11,616,774 of preferred stock of that company which were to have priority over all subsequently created mortgages or incumbrances, but to be subject to ex-

isting mortgages upon the properties of the consolidating companies and to the lien of the bonds thereby secured whether theretofore issued or thereafter to be issued in accordance with the provisions of said mortgages.    The agreement of consolidation further declares in that connection that the right is thereby "expressly reserved by the Consolidated Company as the successor of the Gas Company and the Power Company to issue said bonds," but does not attempt to modify the conditions fixed by the mortgage as the only ones upon which bonds can be issued for the respective purposes therein mentioned.

As neither the Power Company nor the Continental Trust Company, trustee under the Power Company's mortgages of February 14th and 15th, 1905, nor any of the holders of bonds secured thereby are parties to this proceeding and we therefore shall not pass upon their rights if any they have in the premises.    We forbear to further comment upon the terms of those mortgages than to mention the fact that they distinctly provide for a possible consolidation of that company.    They declare that, if in that event the Consolidated Company assume the payment of the mortgage debt, and the performance of the mortgage covenants, it shall succeed to and be substituted for the Power Company with the same effect as if it had been named therein as mortgagor and may cause to be signed and issue either in its own name or that of the Power Company any or all of the mortgage bonds which shall not theretofore have been issued and that the trustee shall certify and deliver such bonds as if they had been executed by the Power Company before the consolidation.    No such provisions nor any of like tenor and effect appear in the Gas Company's mortgage of April 1st, 1904, to the petitioner whose trusts are now being executed in this case.

Under the operation of the conveyances to which we have referred, the Consolidated Company at the time of the institution of the present suit held the property acquired by it from the Gas Company in the process of consolidation sub-

ject *first* to the liens created thereon by the Gas Company, *secondly* to the lien of the $15,000,000 mortgage from the Power Company to the Continental Trust Company, trustee. and *thirdly* to the lien of its own prior lien and preferred stocks amounting to over $12,000,000. The Consolidated Company had also conveyed in broad terms to the Continental Trust Company, as trustee under the Power Company's mortgages, *all property to be thereafter acquired by it,* "subject only to liens existing thereon prior to June 20th, 1906."

On July 3rd, 1907, the Consolidated Company filed a petition in the proceeding before us stating that, since the making of the Gas Company's mortgage of April 1st, 1904, that company and the Consolidated Company as its successor had acquired certain property, without designating the respective portions thereof acquired by the several companies, and asserting a right on the part of the Consolidated Company to hold the property as the successor of the Gas Company. The petition further stated that the Consolidated Company had furnished to the Fidelity Company as trustee under the mortgage in pursuance of the terms thereof a certficate of an engineer and a copy of a resolution of the directors of the Consolidated Company touching such after-acquired property and had requested the trustee to certify and deliver on account thereof two hundred and twenty-five of the bonds called for by the mortgage, but that the trustee expressed doubts as to its right to certify the bonds under the circumstances and declined to do so without an instruction from the Court to that effect. Copies of the engineers' certificate, and the resolution of the directors were filed as exhibits with the petition.

The petition then prayed for an order on the trustee to show cause why it should not certify and deliver the bonds.

On the same day an order was granted as prayed for and the Fidelity Company as trustee, answered the petition asserting as grounds for its refusal to issue the bonds, *first* doubts as to whether under the terms of the consolidation of the Gas and Power Companies, the Power Company mort-

gage to the Continental Trust Company was or not a prior lien on the property in question over any bonds issued under Gas Company's mortgage after the consolidation; *secondly* as to whether, since the Gas Company has gone out of existence, property acquired by the Consolidated Company can be regarded as property of the Gas Company within the meaning of its mortgage of April 1st, 1904, and *thirdly* because the articles of consolidation do not make any express provision for determining how future bonds under that mortgage should be issued and certified.

On the same day on order was passed by the Court, upon the petition, exhibits and answer, directing the trustee to certify and deliver the bonds.

On September 30th, 1909, the Consolidated Company filed in the case a second and similar petition saying that it had from time to time acquired, as successor of the Gas Company additional property and that under orders of Court similar to the one just mentioned bonds under the Gas Company's mortgage had been issued and certified on account thereof and that it had acquired still further property as successor of the Gas Company and had also acquired five of the underlying bonds secured by the mortgage of April 1st, 1904, and that it desired to have bonds certified and delivered to it by the trustee to whom it had tendered the said five bonds for exchange for bonds so to be certified and delivered. An engineer's certificate and resolution of directors of the Consolidated Company touching the last mentioned acquisition of property were filed as exhibits with that petition. The petition further alleged in general terms that all of the property acquired by the Consolidated Company on account of which bonds had been certified and delivered to it by the Fidelity Company as trustee under the Gas Company's mortgage as well as the property for which it then asked an issue of bonds to it, consisted of either additions or improvements to real estate which had been already subjected to the Gas Company's mortgage, or of new property which the Consolidated Company had after its acquisition conveyed to the Fidelity

Company as trustee for the uses and purposes of the Gas Company's mortgage by which the bonds so issued were secured.

The Fidelity Company as trustee under the Gas Com pany's mortgage answered that petition admitting its allegations, but before it was acted on by the Court, Albert Diggs, as holder of five bonds which had been issued under the Gas Company's mortgage and acquired by him while that company was still in existence, intervened in the case by filing a petition opposing the further issue of bonds asked for.

Mr. Diggs' petition after reciting at considerable length the terms and provisions of the Gas Company's mortgage and the events of the subsequent consolidation of that company with the Power Company, insisted that the Consolidated Company was entirely without power to issue bonds so as to come within the operation of the Gas Company's mortgage which was a valid security for only such of the bonds therein described as were outstanding at the time of the consolidation. That assertion was based mainly upon the provision in the articles of consolidation that immediately upon the con solidation all of the property of the Gas Company was to pass to and vest in the Continental Trust Company as trustee under the Power Company's mortgage subject only to such liens thereon "as may have existed prior to the consolidation," which Mr. Diggs insisted amounted to a prohibition of the issue after the consolidation of any further bonds as liens upon the Gas Company's property.

He also contended that the alleged unlawful issue of such bonds would, if permitted to be made, dilute and impair the security and diminish the value of his bonds which had been issued prior to the consolidation.

The Fidelity Company as trustee answered Diggs' petition denying the soundness of his contention and calling in ques tion his right to assert the claims of the Power Company.

The Court passed an order directing the trustee to certify and deliver the bonds prayed for in the Consolidated Com-

pany's petition. From that order Diggs took the present appeal.

Turning now to the consideration of the legal and equitable questions presented by the record it is to be observed that neither the form nor scheme of the Gas Company's mortgage is of doubtful validity or unusual in character. It has been settled by decisions in this State and elsewhere that an owner of property may, by a deed of trust in the nature of a mortgage, subject it to a lien for the payment of future debts or obligations. *Bank* v. *Lanahan,* 45 Md. 396; *Conard* v. *Atl. Ins. Co.,* 26 U. S. 387; 27 *Cyc.* 1069-1071; 20. *A. & E. Encycl.,* 923; *Jones* v. *N. Y. Guarantee & Indemnity Co.,* 101 U. S. 626.

The recent cases generally hold that railroad and other corporations have the power to mortgage future acquired property and that in such cases as soon as the property is acquired by the mortgagor company the lien of the mortgage will be regarded in equity as fastening upon it. 33 *Cyc.* 487; 27 *Cyc.* 1141; *Trust Co.* v. *Kneeland,* 138 U. S. 414, 419; *R. R. Co.* v. *Hamilton,* 134 U. S. 296; *Brady* v. *Johnson,* 75 Md. 455; *Butler* v. *Rahm,* 46 Md. 548.

If the Gas Company had not gone out of existence after making the mortgage all of the bonds contemplated by it would doubtless have been issued without difficulty or question. The destruction of that company which occurred in its consolidation with the Power Company has, by removing some of the agencies requisite for the further issue of bonds, introduced into the situation its present embarrassing features. The first step to be taken for relief from that embarrassment is to ascertain the true nature and effect of such a consolidation.

Both the statute under which this consolidation was made and the decisions of this Court in construing similar consolidations require us to hold that the corporate existence and powers of both the Gas and the Power Company perished in the process of consolidation and that the resultant Consolidated Company was a new and separate corporation and that

the rights then conferred on it were acquired by a new and special grant from the State and did not accrue to it by way of transfer from the constituent corporations or either of them.

Section 46 of Art. 23 of the Code under which the consolidation was made provides that when the certificate of union shall have been properly executed and recorded: "All the property and assets belonging to said former separate corporations of whatsoever nature and description and all the powers and rights and all the debts and liabilities of the former separate corporations of whatsoever nature and description shall upon such recording as aforesaid be devolved upon said new consolidated corporation and every devise or bequest in favor of either of the former separate corporations and which said former separate corporations would have been capable of taking shall devolve upon said new consolidated corporation, which shall be regarded as substituted by operation of law in the room and stead of said former separate corporation."

In the case of the *State* v. *The Consolidated Gas Electric Light and Power Company,* 104 Md. 364, it was held by us that the very consolidated corporation with which we are now dealing, was a new corporation and as such was liable for the bonus tax, imposed by sec. 98 of Article 81 of the Code upon corporations as a condition precedent to commencing to do business. We have also held to be new corporations other consolidated companies formed under the same or similar statutes in the case of *State, use of Dodson.* v. *B. & L. Ry. Co.,* 77 Md. 487, and in three cases of the *State* v. *Northern Central Ry. Co.,* appearing respectively in 44 Md. 131, 90 Md. 447 and 93 Md. 737. Our decision in those cases is in accord with the great weight of authority. 10 *Cyc.* 302; *Yazoo & Miss. Ry. Co.* v. *Vicksburg,* 209 U. S.; *Rochester Ry. Co.* v. *Rochester,* 205 U. S. 256; *Keokuk & Western Ry. Co.* v. *Missouri,* 152 U. S. 301.

We held in *State, use of Dodson,* v. *B. & L. R. R. Co.,* 77 Md. 489, and *Consolidated, etc., Co.* v. *Baltimore County,*

98 Md. 689, that the new corporation, which comes into be-
ing by a consolidation of corporations made under the general
corporation laws of this State, comprehends both of the con-
stituent corporations which then ceased to exist and is in
effect both united in one, and that nothing was destroyed
by the consolidation, and that it was the purpose of the Leg-
islature in providing for such consolidations to enable the con-
stituent corporations to do more efficiently what they had
done before and not to deprive them of any rights or property
which they previously had. It is however true that the means
adopted by the Legislature to carry into effect its purposes
involved *the extinction of the life of the constituent corpora-
tions* and the creation of a *new corporation which is a legal
unit* and not a mere association or aggregation of coexisting
corporations. The rights and powers received by it, from
the State, at its formation, although identical in character
with those which had been possessed by the extinct constitu-
ent corporations, are its own rights and powers and are ex-
ercisable by it alone. The property and franchises formerly
held by the extinct constituent corporations, which devolved
through the consolidation on the new corporation, thereby
became its own and are held by it in its own right with the
same powers of use and disposition as those enjoyed by other
corporate owners of property and the respective portions of it
which came from the several constituents no longer have any
separate legal existence. It may in its discretion apply par-
ticular portions of its property to like uses and in the same
enterprises to those in which they had been formerly em-
ployed by the constituent corporations from which they came,
but in so doing it holds and uses the property in its own
right and on its own account and not as and for the extinct
constituent corporation or in a special capacity as its succes-
sor.

The Gas Company's mortgage made provision for the liqui-
dation of all prior liens existing at the date of its execution
and it is sufficient for the purposes of this case to consider
the extent of the lien created by that mortgage. No question

is suggested as to the lien of the mortgage for such bonds as
were issued in conformity with its provisions during the ex·
istence of the corporate life of the mortgagor.   The only
bonds which remained unissued when the Gas Company be-
came extinct were those authorized either for the retirement
of bonds secured by underlying mortgages or for the future
acquisition of additional property.   We will consider the
right to issue bonds for those two purposes in the order in
which we have named them.

The mortgage itself definitely specifies the number and
limits the amount of bonds which may be issued under it to
retire prior lien bonds.   It prescribes no other terms for the
issue of new bonds, for the retirement of the prior lien ones,
than that whenever the Gas Company, which was the owner
of the mortgaged property, should acquire any of the prior
lien bonds and tender them to the trustee it should certify
and deliver in exchange therefor a like amount of the bonds
provided for by the mortgage.   That is a right which may
with propriety be held to be exercisable by any subsequent
owner of the property, individual or corporate, whether the
ownership had been acquired by purchase or consolidation or
in any other lawful manner.   Such right may well be re-
garded in equity as an incident of the title to the property
so long as it remained subject to mortgage.

If the Gas Company executed the bonds called for by its
mortgage and lodged them with the trustee, before it went
out of existence, the trustee may without further proceedings
certify and deliver them in exchange for an equal amount of
prior lien bonds to the extent authorized by the mortgage at
any time while that instrument remains in force.   If however
the bonds have not been executed by the Gas Company then,
as that company in its mortgage assumed the obligation of the
prior lien bonds and also agreed to retire them as in the
mortgage set forth, there would be jurisdiction in a Court of
equity, upon a proper application to it, to direct their execu-
tion either by a trustee to be appointed for that purpose, or
by the Consolidated Company if the Court should so direct.

But as the power to compel the performance of that agreement is not an incident of the Court's advisory jurisdiction over the execution of trusts it could not ordinarily be invoked in such an *ex parte* proceeding by the trustee as the one now before us. In order, however, to avoid a multiplicity of suits the Court below may entertain such an application, if it is desired, in the present case upon the last petition filed by the Consolidated Company if it be so amended as to bring before the Court in person or by proper representation the holders of subsequent liens upon the property owned by the Gas Company at the date of the consolidation. We think that their interests are sufficiently involved, in the application to now authorize the execution and issue of further bonds under the extinct Gas Company's mortgage, to require that they should receive notice and have an opportunity to be heard in order to be bound by such decree as may be passed under the application.

The question of the right to now execute and issue bonds under the Gas Company's mortgage in payment for property, which was never acquired by that company but has been acquired by the Consolidated Company since its formation, presents far greater difficulties. Under the terms of the mortgage such bonds could be issued only on account of property thereafter acquired by the Gas Company and then only upon conditions, already mentioned by us, to be performed in part by the directors of that company and in part by an engineer to be selected by it. Furthermore the mortgage imposes no obligation upon the company to apply for any bonds, in case it made future acquisitions of property, or to make any such acquisitions. Its status under the mortgage in reference to an application to the trustee for the certification and delivery of any such bonds was a purely voluntary one, the whole matter resting in its discretion.

It is clear that no bonds can now be issued for after-acquired property in exact accordance with the terms prescribed by the mortgage itself because of the termination of the corporate life of the Gas Company.

It was ably contended on the brief and at the hearing on appeal in behalf of the Consolidated Company that it had acquired in the process of the consolidation the right of the Gas Company to issue and have certified reserved bonds under the mortgage and that such right had been exercisable by it ever since the consolidation.

It insists, in that connection, that it is only "so far as their technical corporate existence is concerned" that the constituent corporations, the Gas and Power Companies have ceased to exist and the consolidated one has taken their place. It also insists that "so far however as the rights and obligations of every kind, by contract or otherwise, of the old corporations are concerned, that is, so far as the old corporations are aggregations of rights and obligations apart from any technical questions of corporate existence the old corporations continue to exist precisely as before. They exist with all their rights and obligations unchanged and unimpaired, not in their original corporate entities but in the one new corporate entity which embraces both the old corporations and the rights and obligations of both."

For the reasons mentioned the Consolidated Company contends that it, as the one new corporate entity, can effectually perform the conditions required of the Gas Company by the mortgage to make valid issues of bonds for account of after-acquired property. It insists that this is true even though the property be acquired by it after the Gas Company has gone out of existence, because it can acquire the property in its capacity of successor of the Gas Company in the same manner, for the same purposes and subject to the same restrictions as the Gas Company could have acquired it.

It is further urged in support of this view that the mortgage does not in the provisions relating to the class of bonds now under consideration, refer to the Gas Company in an exclusive sense with the intent to exclude any other corporate entity even a successor by consolidation, but that it is apparent from the whole conveyance that the Gas Company was referred to only as the owner of the property conveyed and

. the possessor of the rights reserved and the subject of the liabilities assumed under the mortgage..

In support of the position thus taken reference is made to the decisions of the United States Supreme Court in the series of ten. cases, frequently designated the *Township and County Bond Cases,* beginning with *Scotland County* v. *Thomas,* 94 U. S. 682, and ending with *Livingston County* v. *Portsmouth Bank,* 128 U. S. 102. Those cases upon ex-amination do not appear to be precisely in point as they pre-sent no question of the identity of the party authorized to is-sue bonds. They merely decide, under a variety of facts and different statutes, that municipal aid, authorized to be given to a designated railroad company by way of stock subscrip-tion or donation as an inducement to or in consideration of acts, supposed to be beneficial to the municipality granting the aid, may be validly paid or delivered to a successor cor-poration under a consolidation when the beneficial acts have been done or completed by the latter corporation.

The right of a consolidated corporation to receive aid in-tended for one of its constituent corporations also differs materially from the right here claimed by the Consolidated Company to secure the benefit of the lien of a mortgage made by one of its constituent companies, by issuing the bonds of that company under different conditions from those prescribed in the mortgage.

We are unable to yield our assent to the contentions of the Consolidated Company in this connection. It cannot acquire and hold property in a special capacity as successor of the Gas Company. As we have already said, property acquired by it is not charged with a trust in favor of that one of its consti-tuents which formerly conducted the particular business in connection with which such property is to be used. Its prop-erty when acquired is not held in special capacities but is completely its own and may be applied to such uses as it sees fit. Such property would be subject to the operation of any general mortgage or conveyance made by the company of its entire estate. An acquisition of property by the Consolidated

Company is therefore not the same thing that an acquisition by the Gas Company prior to the consolidation would have been.

Nor do we think it can be assumed that the Gas Company intended that its successor by consolidation, if it should have one, might execute for it and as its act the bonds called for by the mortgage of April 1st, 1904, because of the absence from the mortgage of any stipulations negativing such an intent. Better might it be said that the failure to express any such intention in the mortgage, as was done in the Power Company's mortgage to the Continental Trust Company, establishes the fact that no such intention existed. The burden of proof of the intention is upon him who asserts its existence.

The Gas Company being under no obligation, when it made its mortgage, to issue bonds for after-acquired property, had the right to fix such conditions precedent to an issue of that character as it saw fit, and the Court cannot compel their issue upon any other conditions. Furthermore, the holders of bonds issued by the Gas Company, while it was still in existence, have a right to insist that none of the reserved bonds be issued except in conformity with the conditions fixed by the mortgage which in effect constituted a contract between the Gas Company and them. *Butler* v. *Rahm,* 46 Md. 541.

In the case of *Emery et al.* v. *Owings,* 7 Gill, 488, this Court held that where the parties themselves had stipulated in a mortgage the method of ascertaining the amount for which it was to be a lien on the property covered by it, a Court of equity had no jurisdiction to compel them to adopt any other mode, and the parties having failed to ascertain the amount in the prescribed manner, it was held that the mortgage created no lien on the land.

The practical question, therefore, before us on this branch of the case is whether the facts appearing in the record can be considered as showing a compliance with the conditions fixed by the mortgage for the issue of the class of bonds now

under consideration. That question we must answer in the negative.

As was said in *N. J. Midland R. R.* v. *Strait,* 35 N. J. L. 322: "Consolidated companies cannot in the nature of things be the same as any one of their constituents." The constituent conducted its own business and applied its capital and revenues to its enterprises alone. The Consolidated Company manages as its own and for its own account the enterprises and occupations formerly conducted by all of its constituents. It receives the revenues from all of them and devotes those revenues to strengthening and advancing such particular ones of the whole number of its enterprises as it elects, or to the promotion of new enterprises within any of its corporate powers, or to its general uses. It may well be supposed that the Gas Company, when it made its mortgage, did not intend its own property to be burdened by liens to raise funds for the use of a successor of so much wider scope and larger needs.

In *New York Security and Trust Company* v. *Louisville, etc., R. R. Co.,* 102 F. R. 382, two railroad companies, on the property of each of which there was a mortgage, entered into a consolidation, and the new company thereby formed made a general mortgage upon the combined properties. All three of the mortgages covered after-acquired property. A controversy arose between the trustees of the three mortgages as to the proper disposition of equipment purchased by the consolidated company. The trustees of the two underlying mortgages which had been made by the constituent companies contended that a proportionate part of the equipment should be deemed to have come under each of the divisional mortgages, but the Court rejected the contention, saying: "The after-acquired property clause in each of the mortgages can be rightly construed, I think, to apply only to property subsequently acquired by the mortgagor. The consolidated company is a new and different organization. The case of *Hinchman* v. *Railway Co.* (Wash.), 44 Pac. 867, is quite in point, and in principle the question seems to be cov-

ered by the decision in *Pullman Pal. Car Company* v. *Missouri Pac. Ry. Co.,* 115 U. S. 587."

We think that in the present case also the after-acquired property for account of which bonds were authorized to be issued by the terms of the Gas Company's mortgage should be construed to mean only property subsequently acquired by that company. As that company put it out of its power to acquire any more property when it surrendered its corporate existence by entering into the consolidation, that action on its part is conclusive of this branch of the case. .

The conclusion which we have thus reached is in our judgment not only sound in principle, but its application to cases like the one now before us will be promotive of simplicity in the management of corporate affairs. In the present case each one of the constituent corporations was itself the result of the consolidation of several earlier ones. If the property and affairs of each of the corporations which have participated in the successive unions that finally produced the Consolidated Company were to be treated as still having in effect a separate existence, or the rights and powers of each corporation were to be regarded as still subsisting as separate aggregations, although its technical corporate existence has ceased, it is practically certain that great confusion would result.

If we are correct in our conclusion that the Consolidated Company cannot for the purpose of the issue of these bonds be·considered as the same as the Gas Company, the acts on the part of the directors of the latter company which are, by the terms of the mortgage made requisite to the issue of the bonds cannot be performed by the directors of the former company, and for that reason also no more of that class of bonds can be issued under the Gas Company's mortgage. The Consolidated Company is, it is true, thus left to finance its own transactions, upon the credit of its own property and resources. It is more directly in accordance with sound business principles that such should be the case than to permit the new company to run the risk of confusion and embarrass-

ment incident to an effort to revivify and utilize the credit of its extinct constituents.

The remaining contention of the Consolidated Company is that the right to issue further bonds under the Gas Company's mortgage is not restricted by the provisions of Art. 4, sec. 1, of the supplemental conveyance of May 15th, 1905, from the Power Company to the Continental Trust Company, as trustee for the holders of the Power Company's bonds. The reasoning and authorities relied on in support of that view may be regarded as going far toward its establishment, but, as neither any of the bondholders of the Power Company nor their trustee are before us in this proceeding, we will not pass upon the question thus presented to us.

We think that, under the terms of the Gas Company's mortgage and the authority of the orders of Court under which it acted, the Fidelity Company, as the trustee therein named, is protected from liability for the certification and delivery of such bonds for account of after-acquired property as were issued since the consolidation, but prior to the order from which the present appeal was taken. Without meaning to intimate an unfavorable view of the rights of the holders of those bonds, we refrain from expressing any opinion in reference to their status, as none of them are parties to the case, nor can the Fidelity Company, which filed the *ex parte* petition on which the proceeding was instituted, be regarded as fully representing them for the purposes of an inquiry into their status as holders of bonds issued under those circumstances.

The order appealed from must be reversed and the case remanded for further proceedings.

> *Order reversed with costs and case remanded for further proceedings in accordance with this opinion.*