## ATTORNEY GENERAL *vs.* BOSTON AND MAINE RAILROAD.

The legislature of another state authorized a corporation, owning a railroad there, and consolidated with a corporation owning a railroad in this Commonwealth, to extend its line of road, and increase its capital stock for the purpose. At that time it was lawful both there and here, and it has remained lawful there, for any corporation to issue new stock to its shareholders at par, without regard to its market value. A statute was then passed here, prohibiting any such consolidated corporation from extending its railroad, or increasing its capital stock, without previous consent of the legislature of this state, but providing that nothing therein contained should be construed to prohibit that particular corporation from extending its road under the authority granted by said other state; and afterwards, on the same day, another statute was passed here, providing that any railroad corporation, authorized to increase its capital stock, should sell the new shares by auction, if the market value of its shares exceeded their par value. *Held,* that the corporation in question, under the authority granted by said other state, might increase its capital stock without further permission of the legislature of this state, and might lawfully issue the new stock at par to its shareholders.

MORTON, J. This is an information brought by the attorney general, to restrain the Boston and Maine Railroad from increasing its capital stock for the purpose of extending its road from

Berwick to Portland, and from issuing the new stock at par to its stockholders, in pursuance of a vote of the corporation to that effect.

The Boston and Maine Railroad originally consisted of three corporations, chartered respectively by the states of Massachusetts, New Hampshire, and Maine. In 1841 the two corporations in Massachusetts and New Hampshire were united, and in 1843 the corporation in Maine was united with the other two, and the three were declared to be one corporation under the name of the Boston and Maine Railroad. The several acts of consolidation contain substantially the same provisions, to the effect that the corporation, so far as its road is situated in Massachusetts and Maine, shall be subject to the general laws of those states respectively, and to the same duties and liabilities as the several corporations of which it was formed. Sts. 1841, *c.* 56 ; 1843, *c.* 90. St. of N. H. 1841, *c.* 6. St. of Maine, 1843, *c.* 108.

By an act of the legislature of Maine, approved February 17, 1871, the corporation was authorized to extend its railroad from Berwick in Maine to Portland, and " to locate, construct, maintain and operate such extended road, with all the rights, powers, privileges and immunities in respect thereto of similar railroad corporations under the law of this state, and subject to like liabilities and duties ; " and for this purpose to increase its capital stock by a sum not exceeding two millions ·of dollars, and to divide the same into shares, and to issue its stock for such amount thereof as shall be found necessary to construct said extended railroad.

By the laws of Maine, the increased stock might be legally and properly issued in the mode adopted by the defendants ; and it may be observed, in passing, that at the time the act was passed the same mode would have been lawful under the laws of Massachusetts applicable to railroad corporations. St. 1870, *c.* 179. The vote of the corporation, authorizing the directors to issue the new stock, and giving the stockholders the right to subscribe for such stock at par, was passed December 13, 1871, before which time a change had been made in the laws of Massachusetts as to the increase of the capital stock of railroads and

the mode of disposing of the increased stock. Sts. 1871, *cc.* 389, 392. It must be conceded that the action of the defendants was in violation of these statutes, if they are applicable to the case.

This statement of the case shows that the votes of the defendant corporation were legal and regular, if they were empowered to increase their capital and issue the stock under the authority and according to the laws of the state of Maine. If the government of Massachusetts had taken no action upon the subject, the case would present the important questions, ably argued by counsel, as to the relative powers of the several states by whose concurrent action a consolidated corporation like this has been created, acting independently of each other, over the corporation, and particularly over that part of its road situated within their limits. But we have not found it necessary to consider these questions, because we are of opinion that the state of Massachusetts has assented to and sanctioned the action of the defendants in the premises under the authority conferred on them by the state of Maine.

The St. of 1871, *c.* 389, provides that, " if any railroad corporation, owning a railroad in this Commonwealth, and consolidated with a corporation in another state, owning a railroad therein, increases its capital stock, or the capital stock of such consolidated corporation, without authority of the legislature of this Commonwealth, or without such authority extends its line of road," " the charter and franchise of such corporation shall be subject to be forfeited and become null and void." But the act contains the proviso " that nothing herein contained shall be construed to prohibit the Boston and Maine Railroad from extending its railroad to Portland in the state of Maine, under the authority granted by the legislature of said state." This proviso cannot be regarded, strictly, as authorizing the extension of the road and the increase of capital. It exempts the defendants from the operation of the statute, and from the necessity of procuring authority from this state; and was intended as a legislative assent to and sanction of, their right to extend their road under the authority granted by the state of Maine. Its effect is to make it lawful for the corporation, so far as this state is con-

cerned, to extend their road in the manner authorized by Maine. The authority granted by that state includes the power to increase the capital stock and to issue the shares in the manner provided in the vote of the corporation. The proviso is in effect an unqualified permission to the defendants to proceed "under the authority granted by the legislature of said state," and by necessary implication permits them to exercise all the powers included in such authority.

We think the necessary effect of the exemption of the defendants' corporation from the operation of chapter 389 was also to exempt it from the operation of chapter 392. This chapter provides that "a railroad corporation authorized to increase its capital stock, or to issue additional shares of stock for any purpose," shall, if the market value of its shares exceeds their par value, sell the new shares at public auction in Boston. This applies only to corporations authorized by this state to increase their capital or to issue new stock. The legislature by permitting the Boston and Maine Railroad to make the proposed extension under the laws of the state of Maine have taken them out of the operation of chapter 392 so far as this extension is concerned. The two statutes were passed upon the same day and form parts of one system. They establish as a sound policy that every railroad corporation, whether consolidated with roads in other states, or maintaining a road wholly within the limits of this state, must procure the authority of this state before it can, among other things, increase its capital stock or extend its line of road, and that every corporation thus authorized shall sell its added shares at auction, if the market value is greater than the par value. It would be inconsistent with the intention of the legislature, manifested in the proviso of chapter 389, to hold that this system was intended to apply to the proposed extension.

Upon a just construction of the two statutes, we think it was the intention of the legislature to exempt the Boston and Maine Railroad, in regard to the proposed extension; upon which they had entered before the laws were enacted, from the operation of this system, and to permit them to make the extension under the authority granted by Maine, and by necessary implication

to permit them to increase their capital stock and to dispose of the new shares according to the laws of Maine under whose authority they were to act.       *Information dismissed.*

*C. Allen*, Attorney General, & *C. F. Adams, Jr.*, for the Commonwealth.

*E. R. Hoar* & *C. F. Choate*, for the defendants.