PROVIDENCE AND WORCESTER RAILROAD COMPANY *vs.* NORWICH AND WORCESTER RAILROAD COMPANY.

Worcester.  Oct. 2, 1884. — Jan. 13, 1885.  C. ALLEN & COLBURN, JJ., absent.

Prior to the St. of 1871, *c.* 343, providing for the establishment of a union passenger station in the city of Worcester for all the railroad corporations whose roads lead into and from the city, and for making corresponding changes in their several tracks and locations, the tracks of the Providence and Worcester Railroad Company ran from the junction station in Worcester, upon a location parallel to and adjoining that of the Boston and Albany Railroad Company, to a point near the new station, and those of the Norwich and Worcester Railroad Company crossed the tracks of the Boston and Albany Railroad Company at grade, and ran to a station in the heart of the city, but did not cross the tracks of the Providence and Worcester Railroad Company. The statute authorized the Providence and Worcester Railroad Company to extend its railroad to the new station, and authorized the Norwich and Worcester Railroad Company to extend its railroad from the junction station to the new station; and authorized both corporations for such purposes to take such portions of the location·of the Boston and Albany Railroad Company as the parties might agree, or, in case of disagreement, as the board of railroad commissioners might determine. A

subsequent section provided that "said corporations severally or jointly may purchase or take such lands as are necessary for any and all the purposes aforesaid, or for additional tracks." It further provided that the former road of the Norwich and Worcester Railroad Company should be discontinued beyond the junction, and that the junction might be passed by express trains without stopping. From the junction station, the tracks of the Norwich and Worcester Railroad Company could be extended to the union station in three ways: 1st, by going between the other two railroads, and taking a portion of the location of each not occupied by the tracks of either, thus obviating a crossing at grade; 2d, by crossing the tracks of the Boston and Albany Railroad Company at grade, and running through a populous part of the city; 3d, by twice crossing the tracks of the Providence and Worcester Railroad Company. Another section of the act directed the construction by the three railroad corporations above mentioned, and by another railroad corporation, of one or more railroad tracks for freight purposes in a certain direction, of which provision the Norwich and Worcester Railroad Company could not conveniently, if it could possibly, avail itself, unless it ran between the tracks of the other two railroads. *Held*, that the statute, by necessary implication, gave to the Norwich and Worcester Railroad Company the right to take a portion of the location of the Providence and Worcester Railroad Company, and to extend its road from the junction to the union passenger station in the first of the three methods above stated.

Under the St. of 1871, c. 343, providing for the establishment of a union passenger station in the city of Worcester, for the use of the several railroad corporations entering the city, authorizing them to extend their tracks to the station, and giving the board of railroad commissioners power to order such changes in the location and arrangement of tracks in the vicinity of the station as the safety and convenience of the public might require, the board has the power, in authorizing one railroad corporation to take a portion of the location of another railroad corporation, to do so on condition that the latter shall have the right to use a track of the former, subject to reasonable regulations to be established by the board.

BILL IN EQUITY, filed April 23, 1883, for an injunction to restrain the defendant from entering upon and using a strip of land, about twenty-eight hundred feet long and twelve feet wide, in Worcester, owned in fee by the plaintiff and being a part of the location of its railroad. The answer admitted that the plaintiff owned the land in fee; and alleged that, by virtue of the St. of 1871, c. 343, and by a decree of the board of railroad commissioners, the defendant had filed its location over the land in question with the county commissioners.

The case was reserved by *Holmes*, J., on the pleadings and proofs, for the consideration of the full court, and appears in the opinion.

*G. F. Hoar*, for the plaintiff.

*F. P. Goulding & G. T. Dewey*, for the defendant.

MORTON, C. J.   It is well settled, as the general rule, that a right conferred by the Legislature to build or extend and maintain a railroad between certain termini does not, *prima facie*, give the power to lay out such railroad over land already devoted to a like public use by the location of another railroad or highway.   But it is an equally well-settled qualification of the rule, that when it appears by the statute, or by the application of the statute to the subject matter, that the contemplated road cannot reasonably be built without appropriating land already devoted to public use, an implication arises that the Legislature intended that such appropriation might be made.   *Housatonic Railroad* v. *Lee & Hudson Railroad*, 118 Mass. 391.   *Worcester & Nashua Railroad* v. *Railroad Commissioners*, 118 Mass. 561.   *Boston & Maine Railroad* v. *Lowell & Lawrence Railroad*, 124 Mass. 368.   *Fall River Iron Works* v. *Old Colony & Fall River Railroad*, 5 Allen, 221.   *Springfield* v. *Connecticut River Railroad*, 4 Cush. 63.

It was the purpose of the St. of 1871, *c.* 343, to establish a union passenger station in the city of Worcester, for the joint use of all the railroads running into that city.   The station was to be on the line of the Boston and Albany Railroad Company, but its location was not precisely fixed by the act : it was left to be fixed, within certain prescribed limits, by three commissioners to be appointed by this court.   When the commissioners made their report, and it was accepted by the court, the location of the station became established, and all the provisions of the act are to be interpreted as applying to the location thus fixed, in the same manner as if it had been determined by the act itself.

When the act was passed, and the place of the station established, the tracks of the Providence and Worcester Railroad Company ran easterly from the junction station to Green Street, a point not far from the new station, upon a location parallel to, southerly of, and adjoining the location of the Boston and Albany Railroad Company ; the tracks of the Norwich and Worcester Railroad Company crossed at grade the tracks of the Boston and Albany Railroad Company at the junction depot, westerly of the location of the Providence and Worcester Railroad Company, and thence ran to its station on Foster Street in the heart of

the city. It was one of the purposes of the act to avoid this crossing. It provides for the discontinuance of the location of the Norwich and Worcester Railroad Company between the junction depot and the Foster Street station; it provides also, in § 14, that the corporations may pass said junction depot with express trains without stopping, thus implying that there was to be no crossing there. The act also provides for the discontinuance of the tracks of the Boston and Albany Railroad Company running to the Foster Street station, and it is clear that one of its purposes was to prevent the use of any tracks with steam power through the heart of the city on the northerly side of the present location of the roads.

The Legislature had in view this state of facts when it enacted, in § 9, that " the Norwich and Worcester Railroad Company may extend its railroad from the junction depot in said city to said union passenger station; and the Providence and Worcester Railroad Company may extend its railroad from its present terminus at Green Street in said city to said union passenger station; and, for the purposes aforesaid, said corporations respectively may take such portions of the location of the Boston and Albany Railroad Company as the parties agree, or, in case of disagreement, as the board of railroad commissioners determines;" — and when it provided, in § 15, that "said corporations may severally or jointly purchase or take such lands as are necessary for any and all the purposes aforesaid, or for additional tracks."

These provisions do not in express terms authorize the Norwich and Worcester Railroad Company to take the land of the plaintiff; but we think they do so by reasonable implication. The situation to which the act was to be applied was this: the tracks of the Norwich and Worcester Railroad Company crossed those of the Boston and Albany Railroad Company at the junction depot westerly of the tracks of the Providence and Worcester Railroad Company; it was to extend its road easterly to the new union station. It is true it was not impossible for it to cross the road of the Boston and Albany Railroad Company, and by laying its tracks through the most populous part of the city, filled with dwellings and manufactories, reach the new station; or, by deflecting to the south and twice crossing the road of the Providence and Worcester Railroad Company, gain access

to the new station; but either of these routes would contravene the purposes of the statute above referred to. On the other hand, the most direct route to the new station was to run over the ground taken by the location of the other two railroad companies, but not occupied by their tracks.

We think this last route was the one the Legislature had in mind. The provision of § 9, as to taking a part of the location of the Boston and Albany Railroad Company, shows this. The provisions of § 11, for the location and construction of one or more tracks for freight purposes, for the joint use of the four roads therein named, show this; for the defendant could not conveniently, if it could possibly, avail itself of the tracks there provided for, unless it ran over a part of the locations of the other two railroad companies.* Taking all the provisions of the act and applying them to the actual situation of the different roads interested, it seems clear that it was the intention of the Legislature to authorize the defendant to take land within the locations of the other roads in order to extend its road to the new passenger station, and that the scheme of the statute and the purposes of the Legislature could not reasonably be carried out in any other way. The plaintiff contends that the provision of § 9 above cited, authorizing the two railroad companies to take such parts of the location of the Boston and

---

\* Section 11 authorized the Norwich and Worcester Railroad Company, the Providence and Worcester Railroad Company, the Worcester and Nashua Railroad Company, and the Boston, Barre, and Gardner Railroad Corporation to unite in the location of one or more railroad tracks for their joint use, commencing at a point on the line of the Worcester and Nashua Railroad at or near Bridge Street, and extending by a curved line, across Bridge Street, Mechanic Street, and Front Street, to a point on the line of the Boston and Albany Railroad east of Green Street. The last-named street lies westerly of the union passenger station, and between it and the junction depot. By the provisions of the section Bridge Street, Mechanic Street, and Front Street were to be crossed by suitable bridges, and the tracks and bridges were to be located, constructed, and arranged as the board of railroad commissioners should direct, after due notice to said corporations, and the mayor and aldermen of Worcester. The point where this road intersects the tracks of the Boston and Albany Railroad Company is called the viaduct junction in the decree of the board of railroad commissioners hereinafter mentioned. Grafton Street there spoken of lies a short distance westerly of the union passenger station.

Albany Railroad Company as the commissioners may determine, by implication excludes the power to take any part of the location of the plaintiff's road. But we do not think this was its purpose. It was intended for the protection of the Boston and Albany Railroad Company, and to make certain that its location would not be encroached upon to any greater extent than seemed to the commissioners just and reasonable.

But the plaintiff contends that the defendant, if it had the authority to take a part of the plaintiff's land, has not made a valid location, in pursuance of such authority. Section 15 provides that the "said corporations shall file locations of all lands so taken within three years after the passage of this act." This time was afterwards extended to June 1, 1876. St. 1873, c. 31, § 3.

In May, 1876, the defendant filed its petition to the board of railroad commissioners, praying that the board would determine what portions of the locations of the Boston and Albany Railroad Company and of the Providence and Worcester Railroad Company it might take, in order to extend its railroad from the junction depot to the union station, under the St. of 1871. The board of railroad commissioners, after a hearing of all parties interested, passed an order determining the location of the defendant's railroad between the two points. The board authorized this location upon the condition that the Boston and Albany Railroad Company might cross the tracks of the defendant at grade, for the purpose of getting to and from its freight yard, and that the Providence and Worcester Railroad Company might cross the tracks at grade for the purpose of getting to and from the tracks authorized by § 11, for freight purposes; and "upon the further condition that said Providence and Worcester Railroad Company shall have the right to use in common with the Norwich and Worcester Railroad Company, and subject to reasonable regulations to be established by this board, one railroad track from said viaduct junction to Grafton Street, which shall be the most southerly of the tracks on the location hereinbefore determined, and said right is hereby reserved to said Providence and Worcester Railroad Company."

On May 31, 1876, the defendant filed in the office of the clerk of the county commissioners at Worcester the location of its

extension as authorized by the board of railroad commissioners. The location as filed states that it is "in accordance with a decree of the board of railroad commissioners authorized by said act of 1871 (an accurate copy of which decree is filed herewith)." Upon searching the records of the county commissioners, a copy of this decree is not now found, and the plaintiff contends that it is to be inferred that none was ever filed, and that therefore the location is illegal and invalid.

We need not consider whether the failure to file a copy of the decree with the location would invalidate it. There is much evidence upon the question whether such copy was filed. It would serve no useful purpose to discuss it in detail, and it is sufficient to say that it seems to us to show, by a fair preponderance, that a copy was filed with the location.

The plaintiff further contends, that the location is invalid, because the board of railroad commissioners authorized it upon certain conditions in favor of the plaintiff which the board had no power to annex. The argument is, that the conditions are an essential part of the location, that the board had no authority to annex or create them, that the plaintiff cannot enforce them, and therefore that the location is invalid, at least so far as it affects the land included in the old location of the plaintiff.

It is not important to consider in this case whether the board had, technically, the right to dictate and determine the location to be adopted by the defendant in extending its road to the new station. If, by the true meaning of the act, the defendant, in making its location, so far as it covered land other than that included in the location of the Boston and Albany Railroad Company, was to proceed under the General Statutes, yet the fact that the board approved and authorized the location actually made by the defendant would not invalidate it. It is clear that before making its location it was necessary for the defendant to apply to the board to determine what part of the land of the Boston and Albany Railroad Company might be included in it, as the board had the exclusive authority to decide this question; and it also, as we shall see hereafter, had the right to determine what should be the location and arrangement of the tracks of the different railroad companies as they approached and entered the station.

The question is whether the board had the right to confer and impose upon the several railroad companies the rights and duties which it attempted to confer and impose by its decree, as the conditions upon which it approved and authorized the location of the defendant.

We do not regard the first condition, as to the right of the several roads to cross each other at grade for freight purposes, as of any practical importance or effect. It merely recognizes and declares rights which exist under the statute. It is clear that the statute, in its provisions for the freight business of the roads, by tracks crossing certain streets by bridges, contemplates that there must be crossings of the different railroads at grade. The scheme of the act could not be carried out otherwise, and the different railroad corporations would have the rights of crossing at grade provided for by the decree, if no decree had been made.

The question as to the right of the board of railroad commissioners to give to the plaintiff the right to use one of the tracks of the defendant, is one of more difficulty.

In construing the statute, it should be borne in mind that the Legislature was dealing with a peculiar and exceptional case. Its purpose was to establish a single passenger station for all the railroads running into Worcester. To accomplish this, three important roads, entering the city from the west and the south, were required to pass over a narrow throat of land between the junction depot and the new station. It was inevitable that differences of opinion and interests would exist between the different railroad companies as to their locations, and the arrangement and management of their tracks, and as to their rights and duties under the act. Indeed, the Legislature had two years before tried the experiment of accomplishing its purpose of having a union passenger station through the agreement of the railroad companies interested, and the attempt had failed. St. 1869, c. 264. The necessities of the case required that some person or board should be authorized to act as arbitrator, and determine and adjust the conflicting claims and interests of the railroad companies. The Legislature selected the board of railroad commissioners as such arbitrator, and by the act conferred upon it large and important powers. We think that, under these

circumstances, the powers conferred on the board by the act ought to be liberally construed, in order to carry out the main purposes of the Legislature.

Section 4 provides that the Boston and Albany Railroad Company shall prepare plans of the new station, showing its relation to the streets and to the tracks of all railroad corporations located or proposed to be located in the vicinity thereof, and submit them to the board of railroad commissioners; and that "said board, after due notice to all said corporations, and to the mayor and aldermen of said city, and a hearing of all said parties to be had in said city, may approve the same, or order such changes, alterations, and improvements to be made in said station, and in the location thereof within the limits aforesaid, and subject to the report of the commissioners mentioned in section one, and in the arrangement and location of said tracks, as in their judgment the safety and convenience of the public and the interests of all said corporations require; and all orders and directions of said board in respect thereto shall be binding on all said corporations." It was the purpose of this section to authorize the board to make all necessary orders as to the location and arrangement of the various tracks, and their position in and approaching the station. If the board found it necessary for the public safety and the interests of the corporations to provide that one of the corporations should use the track of another, we think they had a right so to provide, as an incident and part of the arrangement of all the tracks.

This case has been argued as though the action of the board in passing the decree in question was a separate and independent proceeding. This is not so. The evidence shows that in passing this decree the board was acting under the powers given it by § 4. There was then pending before it the application of the defendant, an application of the plaintiff to determine what location it might make in order to get into the station, and a "hearing on the matter of accommodations to be furnished the several roads in the union passenger station," of which due notice had been given to all the corporations and to the mayor and aldermen of the city, as required by § 4.

The decree in question and the decree upon the application of the plaintiff were parts of the decision of the board of railroad

commissioners upon the matter of the arrangement and location of the several tracks which were to enter the station. The board had the right to provide for the arrangement and location of the tracks of the several railroad companies, and, as a part of this arrangement, to decree that the plaintiff should have the right to use one of the defendant's tracks under reasonable regulations, — a right which the plaintiff can enforce. We are therefore of opinion that the plaintiff does not show any illegality in the location of the defendant, and that this bill cannot be maintained.

In the view we have taken, it becomes unnecessary to consider whether, if the location had been invalid, the plaintiff by its long acquiescence and its acts would be estopped now to question its validity.                                    *Bill dismissed.*