EDWARD F. BROWN & another *vs.* BOSTON AND MAINE RAILROAD & others.

Suffolk.     July 29, 1919. — September 11, 1919.

Present: RUGG, C. J., CROSBY, PIERCE, & CARROLL, JJ.

*Public Service Commission. Boston and Maine Railroad. Practice, Civil,* Brief before full court. *Corporation, Ultra vires. Constitutional Law.*

The jurisdiction given to the Supreme Judicial Court by St. 1913, c. 784, § 27; in equity to review, annul, modify or amend any rulings or orders of the public service commission extends to an order made by that commission in regard to

the consolidation of the railroad companies constituting the Boston and Maine Railroad system and the reorganization of that system under Spec. St. 1915, c. 380, as extended by Spec. St. 1917, c. 323.

Where the plaintiffs in their brief in a suit in equity to review an order of the public service commission in regard to a consolidation of railroad companies and the reorganization of a railroad system declined to discuss the validity of an "alleged debt" of $13,306,000, which was to be paid under the plan of reorganization, further than to restate their previous contentions, and the record disclosed evidence sufficient to determine the validity of this indebtedness, it was *held* that this equivocal position of the plaintiffs was not to be treated as an admission or a waiver, and the court proceeded to decide the question.

On a bill in equity under St. 1913, c. 784, § 27, by minority stockholders of the Boston and Maine Railroad to review an order of the public service commission approving the agreement for the consolidation of the Boston and Maine Railroad system and the plan for the reorganization of that system, it appeared that the notes constituting the unfunded debt of the Boston and Maine Railroad outstanding on March 31, 1915, to be paid or funded under the provisions of Spec. St. 1915, c. 380, § 7, amounting to $13,306,000, all were authorized by votes of the directors, that all were sold for cash, that the proceeds all went into the treasury of the company and that no valid defence to any of the notes was shown, and it was *held* that the debt was a valid one.

In St. 1898, c. 194, authorizing the Boston and Maine Railroad to purchase the shares of any railroad corporation whose road is leased to or operated by it, or of which it owns a majority of the capital stock, the means provided in § 2 of that statute for purchasing such shares by the issuing and sale of its own capital stock is not exclusive of other methods of purchase, and the money for the purchase may be provided by the sale of notes of the company.

Even assuming that the purchase by the Boston and Maine Railroad of shares in its leased and subsidiary lines by means of the sale of notes was *ultra vires*, it could be and was ratified by subsequent legislation.

Sections 2 and 6 of Spec. St. 1915, c. 380, giving the public service commission authority to approve certain acts of the Boston and Maine Railroad after notice and hearing, lawfully confer upon the commission administrative powers and *quasi* judicial functions.

The provisions of Spec. St. 1915, c. 380, deal with a situation peculiar to the Boston and Maine Railroad and its leased lines, no other railroad corporation being similarly situated, and in no way violate the constitutional provisions requiring equal laws.

The approval, in the order of the public service commission above referred to, of the issue by the Boston and Maine Railroad, upon vote of two thirds in interest of the common stock of that corporation, at any time before January 1, 1924, of one hundred and twenty thousand shares of first preferred stock at the par value of $12,000,000 for the purpose of paying an equal amount at par of bonds issued under the reorganization plan for the payment of the floating indebtedness, was *held* to be valid under the circumstances shown.

In the case above described it appeared that a majority of the stock of the Boston and Maine Railroad was held and voted on at the stockholders' meeting, at which the consolidation agreement and reorganization plan were approved, by the Boston Railroad Holding Company, and that the decree of a federal court by which the trustees of the stock of the holding company were appointed authorized them to aid in facilitating a reorganization of the Boston and Maine Rail-

road, and it was *held* that the directors of the holding company were authorized to vote on the stock.

In the same case it was *held* that the delegation by the directors of the holding company of the casting of the vote to two of their number was proper, voting by proxy being authorized by St. 1906, c. 463, Part II, § 37.

In the same case it was *held* that, the Boston and Maine Railroad being a Massachusetts corporation, voting by proxy at a meeting of its stockholders held here in accordance with Massachusetts laws was binding upon the corporation, even if it should be assumed that the law of New Hampshire, under the laws of which State the Boston and Maine Railroad also was incorporated, did not allow voting by proxy.

BILL IN EQUITY, filed in the Supreme Judicial Court on May 1, 1919, by two minority stockholders of the Boston and Maine Railroad under St. 1913, c. 784, § 27, to review, annul, modify or amend an order of the public service commission of March 25, 1919, approving an agreement dated November 26, 1918, for the consolidation of the railroad companies constituting the Boston and Maine Railroad system and a plan for the reorganization of that system under Spec. St. 1915, c. 380, as extended by Spec. St. 1917, c. 323.

The case was heard by *Braley*, J., who made a final decree that the bill be dismissed. The plaintiffs appealed.

The decree appointing the trustees of the stock of the Boston Railroad Holding Company, referred to in the opinion, was made by the District Court of the United States for the Southern District of New York on October 17, 1914.

*C. W. Crooker*, (*E. F. Dwelley* with him,) for the plaintiffs.

*G. L. Mayberry*, (*L. R. Chamberlain* with him,) for the defendant railroad corporations.

*B. E. Eames & W. C. Rice*, representing certain holders of notes of the Boston and Maine Railroad, were given leave to file a brief as *amici curiae*.

RUGG, C. J. This is a bill in equity by two owners of stock, one of fifty-five shares and the other of fifty-two shares, in the Boston and Maine Railroad, under St. 1913, c. 784, § 27, "to review, annul, modify or amend" an order of the public service commission. That order was made pursuant to particular authority assumed to have been conferred by Spec. St. 1915, c. 380, as extended by Spec. St. 1917, c. 323, hereafter termed the special act. Eight railroads are joined with the members of the public service commission as defendants. The special act provided for

a reorganization of the Boston and Maine Railroad and a consolidation by it with its numerous subsidiary and leased railroads. In assumed pursuance of the special act, the presidents and a majority of the directors of each of the defendant railroads, acting for the respective railroads but subject to the consent of the stockholders of the several railroad corporations and to the approval of public authorities of the different States having jurisdiction, entered into an agreement for consolidation of the several railroads into a single corporation. Votes of the stockholders of the several corporations were passed purporting to approve the agreement of consolidation by large majorities. The several corporations then petitioned the public service commission to issue orders and certificates necessary to enable them to carry into effect the agreement for consolidation. Hearings were had and thereafter the public service commission made a report of its findings of fact and issued orders and certificates approving the agreement for consolidation and enabling it to be consummated substantially in accordance with the prayers of the petition.

1. The defendants question the jurisdiction of this court to consider the bill on the ground that the provisions of St. 1913, c. 784, § 27, authorizing proceedings in general for the correction of errors of law in any ruling or decision of the public service commission, are not applicable under the special act. The revision by this court of the orders and rulings of the public service commission, provided for by § 27, relates only to such as are unlawful and then "to the extent only of such unlawfulness." A careful study of the special act reveals no provision which either expressly or by fair implication exempts the public service commission in the performance of the duties thereby imposed upon it from the supervisory control of the court established by § 27. It is not consonant with the main design of the general law or of the special act that unlawful acts committed by the public service commission in respect of this consolidation should go unredressed by the speedy and direct method ordinarily applicable to its rulings and orders.

2. It is provided by § 7 of the special act that "The Boston and Maine Railroad may issue stocks, common or preferred, or bonds, or both stock and bonds, subject to the provisions of section fifteen of chapter seven hundred and eighty-four of the

acts of the year nineteen hundred and thirteen, and of any acts in addition thereto or in amendment thereof, for the purpose of paying or funding its unfunded debt outstanding on the thirty-first day of March in the year nineteen hundred and fifteen, and any debt of any of its subsidiary companies outstanding on such date which it may lawfully assume under the provisions of this act in connection with the purchase of the properties and franchises of or consolidation with such subsidiary companies, which debts, for the purpose of such finding, shall be deemed to be debts properly incurred for lawful purposes under the statutes of this Commonwealth." In § 4, after authorization of the issue of new stock of the reorganized corporation, there is a somewhat similar provision to the effect that "The proceeds of such stock so issued may be applied to the payment of the unfunded debt of the corporation outstanding on the thirty-first day of March in the year nineteen hundred and fifteen, including any indebtedness of any subsidiary company outstanding on said date which said corporation may lawfully assume under the provisions of this act, which debts for the purpose of such payment shall be deemed to be debts properly incurred for lawful purposes under the statutes of this Commonwealth." It appears from the record that these provisions of the special act refer to and include an indebtedness of the Boston and Maine Railroad amounting to $13,306,000 and to indebtedness of subsidiary companies aggregating several millions of dollars.

3. The plaintiffs now, according to their brief, after reciting several reasons leading them to adopt that course, state that they "do not desire to urge their contentions with respect to this alleged debt" upon this court in these proceedings, that is, "whether or not the $13,306,000 of alleged debt of the defendant Boston and Maine Railroad was, at the date of the order of the Commission, the lawful valid debt of that corporation, . . . further than to plainly restate them in this brief." Their reasons for the position now taken are of no consequence. It is only important to understand and deal with their present contentions. If this statement quoted from their brief be treated as a waiver of all contention that the debt of $13,306,000 is void and a concession that for the purposes of this case it is to be treated as valid and binding upon the Boston and Maine Railroad, then the main

ground upon which to rest an argument as to the unconstitutionality of the statute has slipped away so far as concerns this debt.

If it be conceded that the debt of $13,306,000 of the Boston and Maine Railroad which is to be refunded is valid, nothing remains to the plaintiffs worthy to be dignified as a constitutional question concerning deprivation of property without due process of law or denial of equal protection of the laws. It needs no discussion to prove the power of the Legislature to authorize a public service corporation in such financial straits as the Boston and Maine Railroad has been, acting through a majority vote of its stockholders, to refund its valid indebtedness in the manner authorized by the special act against the protest of minority stockholders so far as relates to deprivation of their property without due process of law or denial to them of the equal protection of the laws.

It is not clear, however, that the plaintiffs intend to make such a sweeping admission. A mere declination to discuss the validity of the indebtedness, without admission of its validity for the purposes of this case, cannot compel the court to rest its decision upon constitutional grounds based upon assumption of the invalidity of the debt, when the record discloses enough to determine its validity for the purposes of this proceeding. A statement of desire not to argue propositions "further than to plainly restate them" may be regarded as not a satisfactory waiver and not intended as such. A complete and plain statement of a contention often is a cogent argument in its support.

If there were ground for the contention that the order of the public service commission authorized the inclusion of so large a sum as $13,306,000 unlawfully in the capitalization of a public service corporation, we should hesitate long before passing it over in a proceeding like the present even upon waiver of the point by a party. It would be a gross perversion of the idea of public supervision of capitalization of corporations to permit such an over-capitalization, or capitalization of illegal claims in the nature of debts upon which rates must be permitted to enable a fair return as upon capital honestly invested.

The position of the plaintiffs upon this point seems equivocal. The point itself is of importance. Since it has been raised upon the record and has not been clearly waived, it will be considered under these circumstances. It hardly needs to be said

that the rights of persons in interest not parties hereto cannot be precluded.

4. The finding of the public service commission was that there were outstanding notes of the Boston and Maine Railroad to the amount of $13,306,000, and that this fact was not disputed. The record confirms the truth of this finding. The commission permitted the counsel for the plaintiffs to introduce any competent evidence of any facts which tended to show that any of the notes were not enforceable obligations of the Boston and Maine Railroad. The commission found, however, that in every instance the issue of the notes was authorized by vote of the directors, that the notes were all sold for cash, that the proceeds all went into the treasury of the company and that no valid defence to any of the notes was disclosed. Assuming that a considerable portion of these proceeds afterwards was used to purchase stock of the Worcester, Nashua and Rochester Railroad Company and the Maine Central Railroad Company, the commission further found that there was nothing in such use which affected the liability of the Boston and Maine Railroad on the notes.

The alleged right of the Boston and Maine Railroad to purchase the stock of other railroads rests upon St. 1898, c. 194, § 1, which authorized it, subject to approval of the board of railroad commissioners, to "purchase and hold the shares of the capital stock, or any part thereof, of any railroad corporation whose road is leased to or operated by it, or of which it owns a majority of the capital stock." It appears upon the record to have been conceded that the railroad corporations whose stock was purchased came within this description, and that § 2 of that act authorized the issuance and sale of stock of the Boston and Maine Railroad for the purpose of providing means for the purchase of such shares. At all events, no question was raised touching these points. Section 2 contains no language to the effect that the exclusive method of providing such means is therein set forth. The fair construction of that act as a whole is that § 2 is not a limitation but confers a particular means in addition to those which might otherwise be open to the Boston and Maine Railroad as a corporation acting under § 1. If it had been the purpose of the Legislature to confine the Boston and Maine Railroad to the single method specially provided by § 2, restrictive language to that

end would naturally have been used. This construction is confirmed by practical considerations which need not be detailed at length and by reference to St. 1891, c. 308, which under restrictions authorized the acquisition by the Boston and Maine Railroad of the franchises and property of its lessee and subsidiary companies and recognized as valid its ownership of the capital stock of some of them. See, for example, Sts. 1888, c. 250; 1890, c. 185.

Unless restricted by some provision of law, a railroad corporation has authority to incur debts for lawful purposes. To that end it may borrow money and give its notes therefor. *Commonwealth* v. *Smith*, 10 Allen, 448, 455. *Railroad Co.* v. *Howard*, 7 Wall. 392, 412, 413. See R. L. c. 109, § 24; Sts. 1906, c. 463, Part II, § 48; 1912, c. 725, Part II, § 5.

The result is that the debts of the Boston and Maine Railroad, amounting to $13,306,000, so far as concerns the special act and the authority of the public service commission thereunder, were valid. From this the conclusion is irresistible and indubitable that no question as to the constitutionality of the special act is reached or can arise founded upon any contention that the unfunded debt of $13,306,000 of the Boston and Maine Railroad is illegal. This decision rests upon this ground.

5. The same result would be reached upon another and independent ground. Even if it were assumed (contrary to what the record shows), that the $13,306,000 was a debt incurred by the Boston and Maine Railroad for the purchase of stock in its leased or subsidiary lines without express or implied authority of law, the same conclusion would follow. It is plain on this record that this indebtedness was incurred for the purchase of such stocks. Upon the hypothesis that borrowing of money for that purpose was not within the purview of St. 1898, c. 194, it is manifest that a debt thus incurred would be merely *ultra vires*. There is nothing inherently evil or malefic or contrary to public policy in such purchase. It is forbidden by St. 1906, c. 463, Part II, § 57, "unless authorized by the General Court or by the provisions" of general law. The incurrence of a debt in order to procure funds to make such purchase might originally have been authorized by the Legislature. There is no constitutional objection to subsequent legislation confirming, ratifying and rendering legal and

enforceable such debts although *ultra vires* at the time they were incurred. Such subsequent validation no more interferes with the vested constitutional rights of the stockholders than does a statute confirming the sale of a corporate franchise or the execution of a mortgage originally not authorized by law. *Shaw* v. *Norfolk County Railroad*, 5 Gray, 162, 180. *Graham* v. *Boston, Hartford & Erie Railroad*, 118 U. S. 161, 168–172.

There is no substance in the contention that a subsequent statute ratifying and confirming a debt of a corporation, incurred on sufficient consideration but *ultra vires*, is the taking of property rights of the stockholder without due process of law. Statutes validating contracts void or non-enforceable in their inception have been upheld in numerous instances on the ground that they effectuate the intent of the parties and prevent one from escaping payment for property which he has received. *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, and cases collected at page 8. *Utter* v. *Franklin*, 172 U. S. 416. *Gross* v. *United States Mortgage Co.* 108 U. S. 477. *White Water Valley Canal Co.* v. *Vallette*, 21 How. 414, 425, 426. *Anderson* v. *Santa Anna*, 116 U. S. 356, 363, 364. *Ritchie* v. *Franklin County*, 22 Wall. 67. *Grenada County Supervisors* v. *Brogden*, 112 U. S. 261, 270, 272. *Randall* v. *Kreiger*, 23 Wall. 137, 149. *Watson* v. *Mercer*, 8 Pet. 88.

6. This principle and these decisions effectually dispose also of the contention that it is the exercise of a judicial function by the Legislature to ratify and confirm and authorize the corporation to treat as legal its *ultra vires* debts. *Wildes* v. *Vanvoorhis*, 15 Gray, 139. See *In re Mayor & Aldermen of Northampton*, 158 Mass. 299.

7. There is nothing in the suggestion that § 7 of the special act confers upon the public service commission power to decide a controversy concerning property without trial by jury.

8. There is no vested right in stockholders to subscribe for this issue of new stock. *Attorney General* v. *Boston & Maine Railroad*, 109 Mass. 99. See *Gray* v. *Portland Bank*, 3 Mass. 364. The issue of new stock may be upon such terms as is voted by the stockholders within the scope of legislative sanction. *Hale* v. *Cheshire Railroad*, 161 Mass. 443.

9. There is no delegation of legislative power to the public service commission in §§ 2 or 6. These sections confer only administrative powers upon that commission and certain *quasi*

judicial functions.   They are of a kind which have been exercised in this Commonwealth by this and other commissions of a kindred character for many years.   They have been recognized too long as not violative of any constitutional provision now to be open to question.   No authorities are cited by the plaintiffs in support of this contention and we believe none can be found.   That these sections violate no provision of the Constitution is within the principle of many decisions.   *Mayor & Aldermen of Worcester* v. *Norwich & Worcester Railroad,* 109 Mass. 103.   See *Selectmen of Norwood* v. *New York & New England Railroad,* 161 Mass. 259; *Providence & Worcester Railroad* v. *Norwich & Worcester Railroad,* 138 Mass. 277; *Weld* v. *Gas & Electric Light Commissioners,* 197 Mass. 556; *Commonwealth* v. *Hyde,* 230 Mass. 6; *Boston, petitioner,* 221 Mass. 468; *Childs* v. *Krey,* 199 Mass. 352; *Weston* v. *Railroad Commissioners,* 205 Mass. 94; *Holcombe* v. *Creamer,* 231 Mass. 99, 111.

10. There is no foundation for an argument that the special act violates the constitutional provision requiring equal laws. This case presents a situation peculiar to the Boston and Maine Railroad and its leased lines.   Special legislation was wholly appropriate under these circumstances.   No other railroad corporation is similarly situated.   For many years all legislation respecting railroads was by special act.   Because certain general laws have been passed is no reason why in appropriate instances special acts may not still be enacted.

11. Manifestly it is lawful for the Legislature to provide in enacting a general plan for the consolidation of several railroads that an existing corporation, in this case the Boston and Maine Railroad, to which the others become joined, shall assume and pay or provide for the payment or refunding as its own of debts of other subsidiary companies as part consideration for the purchase of their property and franchises which otherwise under existing law it would be unlawful for the Boston and Maine Railroad to pay or to refund.   There has been no serious question on this record concerning the validity of the debts of the several subsidiary railroad corporations, as against the original debtors, which under the special act may be and under the order of the public service commission are to be refunded by the Boston and Maine Railroad as reorganized.

12. The order of the public service commission approved the issue, upon vote of two thirds in interest of the common stock of the Boston and Maine Railroad at any time before January 1, 1924, of one hundred and twenty thousand shares of first preferred stock at a par of $12,000,000 for the purpose of paying an equal amount at par of bonds issued under the plan. This order was valid under the circumstances. The option to issue this stock rests with the majority vote of the common stockholders. It is not a right to demand stock vested in the bondholders. Section 7 of the special act expressly authorizes the issue of such stock, to pay its unfunded debt, without limit as to time. The present order and plan authorize issuance of the stock to pay bonds by which in the first instance the floating indebtedness is to be paid. There is nothing in *Bulkeley* v. *New York, New Haven, & Hartford Railroad*, 216 Mass. 432, at all at variance with this conclusion. In that case the general law was considered, while the case at bar rests upon a special act passed for the avowed purpose of establishing different rules to meet an extraordinary situation. In that case the option to demand stock rested with bondholders, whose interest inevitably would be to exercise their option only in the event that they could get stock of a railroad corporation by paying less than its real value and thus unduly increase capitalization. In the case at bar the option rests with those whose interest will lead them to get full value for the stock and not to increase the capitalization beyond that for which the corporation receives full return. The time within which the right may be exercised is not under these circumstances unreasonably long. The facts in that case were radically different from those in the case at bar.

13. There is nothing on this record to show that the meetings of the stockholders of the several corporations, at which the votes were passed approving the terms of the consolidation agreement, were not legally called and held. The finding of the public service commission is explicit. The burden is upon the plaintiffs to show that this finding is invalid. We find nothing on the record to support a reversal of this finding as illegal.

14. There is no invalidity disclosed on this record respecting the voting of the stock in the Boston and Maine Railroad held by the Boston Railroad Holding Company. The latter company

held a majority of the stock of the former corporation. No legal meeting of its stockholders could be held without this stock. St. 1906, c. 463, Part II, § 33. The decree of the federal court appointing trustees of the stock of the Boston Railroad Holding Company among other matters directed them to "exercise all the powers which owners of shares of the holding company are entitled to exercise, except the right to sell or otherwise dispose of them," to act in the election of directors in any corporation which it controls so as to assure efficient management in the interest of that corporation and to aid in facilitating a reorganization of the Boston and Maine Railroad. These powers involved a voting of the stock in order to effectuate the manifest design of the decree. The delegation by the directors of the holding company of two of their number to vote its stock in the Boston and Maine Railroad was proper. Voting by proxy was authorized. St. 1906, c. 463, Part II, § 37.

15. The Boston and Maine Railroad being a Massachusetts corporation, voting by proxy at a meeting of its stockholders held here in accordance with Massachusetts law was binding upon the corporation. Even if it be assumed that the law of New Hampshire, within which State the Boston and Maine Railroad also was incorporated, was different in respect of permitting voting by proxy at the meeting of the stockholders, a fact not clearly apparent upon this record, the stockholders' meeting held in Massachusetts and conducted according to its law was lawful. The meeting need not be repeated in New Hampshire, even if it be assumed that the law of that State was different in this particular and did not allow voting by proxy. *Graham* v. *Boston, Hartford & Erie Railroad*, 118 U. S. 161, 168, 169. *Attorney General* v. *New York, New Haven, & Hartford Railroad*, 198 Mass. 413, 420, 422.

16. For the same reasons the meetings of the other corporations chartered under Massachusetts laws and under the laws of other States were valid and binding because held here and in accordance with our laws.

All the questions argued by the plaintiffs have been considered. No further discussion is required. There is no merit in any of the plaintiffs' contentions.

*Bill dismissed with costs.*