DeCOURCY W. THOM ET AL. *v.* BALTIMORE TRUST COMPANY.

[Nos. 78, 79, October Term, 1929.]

*Decided January 15th, 1930.*

The causes were argued before BOND, C. J., URNER, AD-
KINS, OFFUTT, DIGGES, and SLOAN, JJ.

*Carlyle Barton* and *Douglas H. Gordon,* with whom were
*Niles, Barton, Morrow & Yost* on the brief, for the appel-
lants.

*G. Ridgely Sappington,* for the appellee.

URNER, J., delivered the opinion of the Court.

The inquiry in this case is whether the appellants, as stock-
holders of the Baltimore Trust Company, were entitled to
exercise the right to purchase a due proportion of a supple-
mental issue of its capital stock. It was held by the lower
court that such a pre-emptive right would exist if the new
shares had been intended to be sold for cash, but that, as they
were to be issued in payment for property, consisting of the
stock of the National Union Bank of Maryland, the asserted
right was not enforceable. The appeals are from an order
and a decree effectuating that conclusion.

The case was heard on bill and answer, and from the pleadings and exhibits we learn the controlling facts, which may be briefly stated. At a meeting of stockholders of the Baltimore Trust Company, held after legal notice; approval was given, by the holders of more than two-thirds of its outstanding shares, to a plan recommended by its directors to merge its interests with those of the National Union Bank of Maryland. According to the plan, as submitted and adopted, the trust company would issue 15,000 shares of its stock, at a valuation of $112 per share, for the purpose of acquiring the 10,000 shares of the National Union Bank stock at a valuation of $168 per share. The contract to that end between the representatives of the two institutions was to be consummated only in the event that at least seventy per cent. of the bank stock could be delivered upon the agreed terms. The requisite increase of the trust company's capital stock was authorized by a charter amendment duly adopted by its stockholders. A contemporaneous amendment of the charter provided: "Upon any increased issue of stock, the stockholders shall have the *pro rata* preferential right to subscribe therefor at such price and on such terms as the board of directors may in each instance fix. In the event of the issue of any additional stock of the company for the purpose of accomplishing the merger with or of acquiring any other bank or trust company or other property, the directors may issue said stock without preferential subscription rights to stockholders or with preferential subscription rights to such extent and on such terms as the board may in each instance deem proper." As the owner of 6,416 of the 70,000 shares of the trust company's capital stock, the plaintiffs voted and protested against the merger agreement, and the use of the proposed new issue of stock for the exchange purposes contemplated, which involved a disregard of the privilege of proportional purchase upon which the plaintiffs insisted. All of the 10,000 shares of the National Union Bank stock were in fact made available for delivery to the trust company upon the merger terms, and the whole of the new issue of 15,000 shares of the trust company's

stock was required for the acquisition of the bank stock at the valuations specified in the agreement for the exchange.

The right of pre-emption claimed by the plaintiffs is said to be inherent in their stock ownership, and also to be conferred by the charters of certain corporations from the consolidation of which the Baltimore Trust Company derived its existence and the powers it possessed at the period when the merger with the National Union Bank was being negotiated. As then constituted, the Baltimore Trust Company owed its origin to the union of two corporations, one of which had been formed as the result of an earlier consolidation. The charter of one of the constituent companies participating in the last consolidation made no provision for a pre-emptive right of stockholders with respect to additional issues of stock, and neither of the consolidation agreements made any reference to such a privilege. It was accorded in the charters of the two corporations which united under the first consolidation, but in one there was an important limitation, which the other did not contain, in regard to the exercise of the right. If the holders of stock of the Baltimore Trust Company, into which the stock of the constituent corporations was converted in pursuance of the consolidation, were entitled to refer to the charters of the former companies for the ascertainment of their rights, it would be impossible to find in those charters any support for the pre-emptive option as exerciseable equally by all owners of the present company's stock. The effect of the successive consolidations was to end the existence of the constituent corporations and to vest in the new corporation all of their property, powers and liabilities (Code, art. 23, sec. 34; *Diggs v. Fidelity & Deposit Co.,* 112 Md. 72), and, while consistent privileges of stockholders conferred by the superseded charters may presumably continue as incidents of the consolidated stock ownership, there could be no such survival of rights traceable to only one of the charters, or subject in one to a special limitation, because the uniform and equal recognition of the right in all the stockholders of the consolidated company is impossible under such conditions, so far as any charter origin of the right is concerned.

Independently of the charters, however, the stockholders of a corporation have a preferential right to purchase new issues of its shares, to the proportional extent of their respective interests in the capital stock then outstanding, when the privilege can be exercised consistently with the object which the disposition of the additional stock is legally designed to accomplish. The right inheres in stock ownership as an essential means of enabling a stockholder to maintain the existing ratio of his proprietary interest and voting power in the corporation. It is an option which is capable of practical and useful exercise when new stock is to be issued for money needed to increase the company's cash assets. To that extent the right is well recognized, but to such stock issues it is generally restricted. In transactions involving the acquisition of property by corporations in exchange for shares of their stock, the determining consideration to the owners of the property may be the advantage of sharing as stockholders in the profits of the corporation with which they are contracting. In the present case every stockholder of the National Union Bank, for each of his shares of the stock of that institution, was to receive one and one-half shares of Baltimore Trust Company stock. It would not be feasible to consummate a transfer based upon such a consideration if the pre-emptive right asserted in this suit were to be held enforceable with respect to every new issue of stock regardless of the object of its disposition. Within the limits just indicated, the preemptive rights of the plaintiffs and other stockholders of the Baltimore Trust Company are recognized and protected by the new charter amendment which we have quoted. In declaring the right as to sales of stock for cash, and in restricting it as to issues of stock for accomplishing a merger or acquiring property, the amendment is in valid accord with the principles we have stated, which have adequate support in reason and authority. *Real Estate Trust Co. v. Bird,* 90 Md. 229; *Stokes v. Continental Trust Co.,* 186 N. Y. 285; *Miles v. Safe Deposit & Trust Co.,* 259 U. S. 247; *Brown v. Boston & M. R. R. Co.,* 233 Mass. 502; *Meredith v. New*

*Jersey Zinc & Iron Co.,* 55 N. J. Eq. 211, 56 N. J. Eq. 454; *American Law Institute, Re-statement of Law of Business Associations, Tentative Draft No.* 1, pp. 33, 34, 42, 43.

It is argued for the plaintiffs that the Baltimore Trust Company had no power to issue its stock for property, and that, under the agreement between its representatives and those of the National Union Bank, the new stock of the trust company was in fact to be issued for cash. In regard to the latter contention it is sufficient to say that, in its real and expressed design, the agreement between the two corporations provided for the exchange of trust company stock for the assets and stock of the bank, and the valuations and methods adopted for the transfer affected only the form and not the substance of the transaction. It was said by this court in *Brant v. Ehlen,* 59 Md. 29, to be the well settled law that a corporation may receive in payment for its shares of stock any property which it may lawfully purchase. Among the powers devolved upon the trust company by the consolidations from which it resulted was the authority conferred by statute upon the International Trust Company of Maryland, one of the constituent corporations, to purchase "chattels, bonds, certificates, mortgages, notes, checks, drafts, loans, land or other property or securities of any individual, firm or corporation upon such terms as may be established by said company or agreed upon between the parties." (Acts of 1900, ch. 110.) The general Code provisions relating to banks and trust companies include in the grant of all such powers as shall be usual in carrying on the business of banking, an authorization to purchase stocks and other securities. (Code, art. 11, sec. 46.) It was therefore legally competent for the Baltimore Trust Company to purchase stock of another banking institution. There is no charter or statutory restriction upon its right to pay for such stock with its own shares, and it is expressly authorized to amend its charter, by vote of its stockholders, "in any manner not inconsistent with the provisions of law." (Code, art. 11, sec. 54.) In regard to amendments increasing the capital stock, it is provided, by the section just cited: "Unless the required surplus will permit, no

increase of capital shall be valid until the amount thereof has been subscribed and actually paid in." The record shows that the surplus of the trust company is largely in excess of the amount by which its stock would be augmented by the new issue for which the recent amendment of its charter provides, and hence no resulting impairment of its capital is involved. The last quoted clause indicates by its terms that the restriction intended to be imposed upon capital stock additions should not apply when the surplus is sufficient to admit of an increase of the stock consistently with the continued integrity of the capital; and such a financial condition is here shown to exist.

As our conclusion agrees with that of the lower court, we shall affirm its decree dismissing the bill of complaint.

*Order and decree affirmed, with costs.*