LUCIUS S. STORRS ET AL., RECEIVERS, *v.* JOHN J. GHINGHER, BANK COMMISSIONER.

[No. 49, January Term, 1934.]

*Decided April 6th, 1934.*

The cause was argued before BOND, C. J., URNER, AD-KINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edgar Allan Poe,* with whom was *Joseph C. France* and *Charles McHenry Howard* on the brief, for the appellants.

*Stuart S. Janney,* with whom was *Southgate L. Morison* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

As receivers of the United Railways & Electric Company of Baltimore, the appellants have a deposit account of $127,-366.55 with the Baltimore Trust Company, which has been in the custody and control of the bank commissioner of Maryland since March 4th, 1933, under the provisions of the

Emergency Banking Act (chapter 46). The object of this mandamus suit is to require the bank commissioner to pay the receivership deposit account in full as a preferred claim. The trust company is alleged to be insolvent, and is in course of liquidation. After the appointment of the receivers by the District Court of the United States for the District of Maryland, on January 5th, 1933, they were authorized and directed by that court to make deposits of receivership moneys in the Baltimore Trust Company as one of the banks in which the United Railways & Electric Company had been accustomed to deposit its funds.

The receivers claim priority for their deposit account with the trust company upon the theory that its designation by the United States District Court as one of the institutions in which the funds of the receivership should be placed thereby made it a "depositary" within the meaning of section 48 of article 11 of the Code of Public General Laws, relating to preferences in the distribution of the assets of insolvent trust companies incorporated under the laws of Maryland. It is contended also that priority for the receivership deposit is sustainable under the terms of the Baltimore Trust Company's charter. The chancellor decided that the claim is not preferential. The case had been presented for a decision on demurrer to the petition for mandamus. After the demurrer had been sustained and the receivers had declined to avail themselves of leave to amend, the petition was dismissed. From the order sustaining the demurrer and dismissing the petition, the receivers have appealed.

Section 48 of article 11 of the Code provides: "No bond or other security shall be required from any trust company for or in respect to any trust to which it shall be appointed, executor, administrator, guardian, trustee, receiver, committee or depositary by the order of any court. * * * Upon the dissolution of any such company by the Legislature, court or otherwise, or in case of its insolvency, all debts or liabilities due or owing by such corporation in any of said fiduciary capacities, shall be preferred in the distribution of the assets

of such company to all debts or liabilities of any nature whatsoever, including salaries and wages of employees and other preferred debts or liabilities. * * *"

The meaning of the term "depositary," as used in that provision of the Code, was considered and determined by this court in the case of *Melville v. Page,* 165 Md. 597, 170 A. 175, 176. The question in that case was whether an order of the orphans' court, authorizing and directing an executrix to deposit a fund in a designated bank which became a branch of the Central Trust Company, had the effect of making the institution a depositary of the fund within the intent of the Code provision which we have quoted. In the opinion, by Judge Parke, the question is thus discussed:

"To know the meaning of section 48, it is necessary to read its terms in connection with two preceding sections. All these sections relate to trust companies, and section 46 enumerates the powers possessed by the trust company upon its incorporation. Among these is the capacity "to act under the order or appointment of any court of record as guardian, receiver or trustee of the estate of any minor or other person or corporation, and as the depositary of any moneys paid into court, whether for the benefit of any such minor or other person, corporation or party.' And, among other things, the succeeding section 47 declares, in its last sentence, that: 'Any court into which moneys may be paid by parties, or be brought by order of judgment, may, by order, direct the same to be deposited with any such corporation.' Section 48 exempts the trust company from giving bond or other security for or in respect to any trust to which it shall be appointed executor, administrator, guardian, trustee, receiver, committee, or depositary by the order of any court. 'In all cases,' in the words of the section, 'in which such trust companies, whether incorporated under this article or by special act, shall be appointed, or shall be acting, as executor, administrator, guardian, trustee, receiver, committee, or in any other fiduciary capacity, they shall be responsible for losses of moneys or property received or held by them in any such

character in the same cases and to the same extent as individuals so acting would be. Upon the dissolution of any such company by the Legislature, court or otherwise, or in case of its insolvency, all debts or liabilities due or owing by such corporation in any of said fiduciary capacities, shall be preferred in the distribution of the assets of such company to all debts or liabilities of any nature whatsoever, including salaries and wages of employees and other preferred debts or liabilities.'

"No contention is made that the Central Trust Company of Maryland was appointed as either trustee, receiver, guardian, committee, administrator, or executor by the order of any court, but the argument is that the trust company had been appointed as a depositary by the order of the orphans' court. The argument, however, ignores the statutory definition of a depositary, and the relation of the executrix of the will to the fund involved.

"The terms of these sections are plain that, to constitute a trust company a depositary within the meaning of the statute, it is indispensable that the money be paid into court either as the voluntary act of parties 'or be brought by order of judgment,' and that, when so paid, the court pass an order directing that the money be deposited with a trust company. The payment of money into court is a familiar practice at law and in equity."

After citing various instances in which payment of money into court is properly resorted to, the opinion proceeds:

"Thus, generally, the payment of money into court is for the purpose of avoiding litigation, interest, and costs; or of ascertaining the ownership or proper distribution of the fund; or, most usually, of securing and preserving property in dispute pending litigation. * * * Money, therefore, may not be paid into court unless under such circumstances as give the court power to receive it, but, when the money is rightly paid into court, its custody, control, and ultimate disposition is in the court in the matter pending over which the court has jurisdiction. Such money, therefore, is what

the court may by order direct its proper fiscal official to deposit with a trust company within the meaning of sections 46, 47 and 48 of article 11.

"In the instant case the court did not order the funds in the hands of the executrix to be paid into court, nor did the court ever receive the fund into its custody, so, the money having neither been paid into court by the executrix nor brought in by force of the court's order, the conditions were not fulfilled to enable the court to direct its officer to deposit the money with any trust company within the meaning of the sections under consideration. Nor can the order directing the deposit to be made by the executor in the designated bank be interpreted to be other than an order which, on the application of the executrix, gave the court's sanction and approval to the selection of the designated bank as a good banking institution with which the fund could be placed on deposit."

It is argued in the present case that the relationship of the receivers to the court which has appointed them is different from that of other fiduciaries, and is such that receivership funds are to be regarded as being virtually in the court's own custody. But it would not be correct to say that money held by receivers is in the same situation as if it had been paid into court. It is in fact held by fiduciaries appointed by the court for specific administrative purposes. While receivers are officers of the court (*Gaither v. Stockbridge*, 67 Md. 227, 9 A. 632, 10 A. 309), and have no title to the money coming into their hands (*Ghingher v. Pearson*, 165 Md. 273, 168 A. 105, 109), they have active and important duties in regard to the collection, conservation, and perhaps the eventual distribution of the funds derivable from the assets committed to their care. For the purposes of a payment into court the appointment of a receiver is unnecessary.

In view of the definite and recent decision that, in order to constitute a depositary, within the purview of the priority

provision of section 48 of article 11 of the Code, it is requisite that the deposit, in a specified trust company, should be of funds under the court's direct control, and not in the custody of fiduciaries appointed for the purpose, we have no alternative but to conclude that the Baltimore Trust Company did not receive as a depositary in the statutory sense, and subject to the right of priority, the funds deposited by the appellants in that institution. Recognition of such a preference depends upon prescribed conditions which do not here exist.

A provision of the Emergency Banking Act (chapter 46, Acts 1933, Code, art. 11, sec. 71G, creating a preferential right of withdrawal of receivership funds, deposited by the bank commissioner as receiver of a banking institution, has been held to be an invalid discrimination in favor of such funds. *Ghingher v. Pearson, supra.*

The Baltimore Trust Company owes its present corporate existence to the consolidation in 1929 of a corporation bearing that name with the Century Trust Company of Baltimore. Previously, in 1925, the Baltimore Trust Company had consolidated with the Atlantic Exchange Bank & Trust Company. The original organization of the Baltimore Trust Company resulted from a consolidation of the Baltimore Trust & Guarantee Company and the International Trust Company of Maryland.

In the statutory charters of the two last named corporations were priority provisions by which the present Baltimore Trust Company is said to be affected and the claim of preference in this case supported. By the act incorporating the National Trust & Guarantee Company (Acts 1882, ch. 495), as amended by the Acts of 1890, ch. 11, changing the name of the corporation to the Baltimore Trust & Guarantee Company, and by the Acts of 1892, chapter 40, it was provided: "That any and every court of any state into which moneys may be paid or deposited by agreement of parties, order, judgment or decree of such court, may order and direct the same to be deposited with said company; * * *" and "when

appointed executor, administrator, guardian, receiver, trustee, assignee or depository, and in case of a dissolution by a court of law or equity, or otherwise, the debts, dues, moneys and obligations due from it as aforesaid shall have preference." Section 13, as re-enacted by Acts 1892, ch. 40, sec. 1.

The Acts of 1896, chapter 309, incorporating the International Trust Company, contains the following provision: "And it may be lawful for any court of this State or United States court into which moneys, stocks, bonds or other property may be paid or deposited by agreement of parties, order, judgment or decree of such court, to order and direct the same to be deposited with said corporation. * * *" Section 8. "That whenever any court shall appoint the said corporation a receiver, trustee or assignee, or shall order the deposit of money or other valuables of any kind with said corporation, the capital stock of said corporation shall be taken and considered as the security required by law for the faithful performance of any duty imposed upon it by orders or decrees of such court, unless the said court shall deem proper to require further security. * * *" Section 9. "That in case of the dissolution of said corporation, the debts due from the corporation as receiver, trustee or assignee or depository of funds under order of any court or courts, shall be preferred in the distribution of the assets of said corporation." Section 10.

The charters of the Atlantic Exchange Bank & Trust Company and the Century Trust Company were procured under the general incorporation laws of Maryland and include no provisions, independently of those contained in the Code, for preferences in the payments of deposits in the event of insolvency or dissolution.

The provisions quoted from the legislative charters of the Baltimore Trust & Guarantee Company and the International Trust Company may be regarded as having substantially the same effect as sections 46, 47 and 48 of the Code, so far as the present question of preference is concerned. In all alike there is an indication that the term "depositary" has

reference to the status of a trust company in which funds previously paid into court have been deposited by judicial direction. But, even if the provisions in the charters of two of the constituent corporations may be susceptible of the interpretation for which the appellants contend, we must give due consideration to the fact that two other corporations, with charters containing no such provisions, were involved in the consolidations from which the existing Baltimore Trust Company resulted, and that none of the consolidation agreements provided for priority to any class of depositors. In *Thom v. Baltimore Trust Co.,* 158 Md. 352, 148 A. 234, a stockholder of the Baltimore Trust Company claimed the right of pre-emption with respect to a new issue of its capital stock. It was said in the opinion (page 355 of 158 Md. 148 A. 234, 255): "The charter of one of the constituent companies participating in the last consolidation made no provision for a pre-emptive right of stockholders with respect to additional issues of stock, and neither of the consolidation agreements made any reference to such a privilege. It was accorded in the charters of the two corporations which united under the first consolidation, but in one there was an important limitation, which the other did not contain, in regard to the exercise of the right. If the holders of stock of the Baltimore Trust Company, into which the stock of the constituent corporations was converted in pursuance of the consolidation, were entitled to refer to the charters of the former companies for the ascertainment of their rights, it would be impossible to find in those charters any support for the pre-emptive option as exercisable equally by all owners of the present company's stock. The effect of the successive consolidations was to end the existence of the constituent corporations and to vest in the new corporation all of their property, powers and liabilities (Code, art. 23, sec. 34; *Diggs v. Fidelity & Deposit Co.,* 112 Md. 72, 75 A. 517), and, while consistent privileges of stockholders conferred by the superseded charters may presumably continue as incidents of the consolidated stock ownership, there

could be no such survival of rights traceable to only one of the charters, or subject in one to a special limitation, because the uniform and equal recognition of the right in all the stockholders of the consolidated company is impossible, under such conditions, so far as any charter origin of the right is concerned."

In that case the rights of stockholders were being considered, while here the claim of depositors for priority is under discussion. But in our judgment both questions are governed by the same principle. Five corporations have united in a series of consolidations to form the trust company with which the receivership funds now in question were deposited. In the charters of three of the constituent corporations there is no provision for depositary priority. The other two charters provide for preferences under conditions which in some respects are materially different. There is consequently no uniform and consistent right of priority for depositors which can be traced to the various pre-existing charters and held to have survived the consolidations.

Our conclusion is that the claim of the appellants for priority is not sustainable under either the Code or the charter provisions upon which they rely.

*Order affirmed, with costs.*